United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| STEVEN ROBERT PRESCOTT, et al., | Case No. 20-cv-02101-BLF |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| RECKITT BENCKISER LLC, | |
| Defendant. | [Re: ECF 111] |

Plaintiffs bring this putative class action against Defendant Reckitt Benckiser LLC ("Reckitt") on behalf of consumers who purchased Woolite laundry detergent labeled with the phrases "COLOR RENEW" and/or "revives colors" (collectively, "the color renew/revive representation"). Plaintiffs assert that the color renew/revive representation was false or misleading, because Woolite laundry detergent does not renew or revive color in clothing. They assert consumer claims on behalf of the residents of three states, California, New York, and Massachusetts.

Plaintiffs move for certification of a California class, a New York class, and a Massachusetts class of consumers. Reckitt opposes certification. The motion is GRANTED for the reasons discussed below.

## I.    BACKGROUND

In 2017, Reckitt launched a new marketing campaign for its Woolite brand laundry detergents. *See* Kafka Decl. ¶ 3 and Exh. 1; Exh. 7, Fuentes Dep. 33:18-24. Reckitt changed the formula of its Woolite Gentle Cycle detergent and Woolite Darks detergent, and it began

marketing those products by representing that the reformulated detergent would "renew" and "revive" color in clothing. *See* Kafka Decl. ¶ 3 and Exh. 1; Exh. 7, Fuentes Dep. 33:18-24. On 100% of those detergent bottles, the back label displayed the phrase "revives colors" as part of a prominent graphic showing that the reformulated detergent "smooths rough fibers" and "removes pilling and fuzz" with the end result that it "revives colors." *See* Henry Exh. 14, Tyrell Decl. ¶¶ 5-10. On approximately 57% of the bottles, the back label also displayed the phrase "HOW COLOR RENEW WORKS" inside a rainbow-colored hexagon. *See id.* Finally, on approximately 55% of the bottles, the front label displayed the phrase "COLOR RENEW" inside a rainbow-colored hexagon. *See id.*

In conjunction with the new marketing campaign, Reckitt implemented a ██% increase in its wholesale prices for all sizes of Woolite Gentle Cycle detergent and Woolite Darks detergent, with the exception of the ████████████████████ *See* Kafka Decl. Exh. 3, Tedesco Dep. 90:23-91:3. Although it did not increase the wholesale price for the ██████████ Reckitt cancelled a previously-planned decrease in the wholesale price for those bottles. *See* Kafka Exh. 20, Pinsonneault Report ¶¶ 60-61.

A competitor in the detergent market, Procter & Gamble, initiated a challenge to Reckitt's advertising with the National Advertising Division ("NAD") of the Council of Better Business Bureaus.[1] *See* Kafka Exh. 37, Procter & Gamble's Challenge. Among other things, Procter & Gamble asserted that Reckitt's claim that Woolite detergent "revives color" is misleading because Woolite detergent does not add color back to fabrics. *See* Kafka Exh. 37, Procter & Gamble's Challenge at 14. In August 2019, the NAD issued a decision recommending that Reckitt discontinue its claim that Woolite detergent "revives color." *See* Kafka Exh. 41, NAD Recommendation at 16. Reckitt voluntarily agreed to discontinue the "revives color" claim. *See id.* Reckitt stopped distributing Woolite bottles with the allegedly misleading labels in April 2021. *See* Kafka Decl. Exh. 2.

---

[1] "The Council isn't a binding arbitral body, an administrative agency, or a judicial tribunal. Rather, it's a private organization that offers a voluntary, alternative setting for resolving 'advertising disputes between competitors.'" *NeoCell Corp. v. BioCell Tech., LLC*, No. SACV 16-02173 AG (JCGx), 2017 WL 10605266, at *1 (C.D. Cal. Aug. 21, 2017).

United States District Court
Northern District of California

1    Plaintiff Steven Robert Prescott, a California resident, filed this putative class action in

2  March 2020 on behalf of a California class of consumers.  *See* Compl., ECF 1.  He filed a first

3  amended complaint ("FAC") in May 2020.  *See* FAC, ECF 24.  The Court granted in part and

4  denied in part Reckitt's motion to dismiss the FAC, without leave to amend.  *See* Order, ECF 70.

5  The Court thereafter granted Prescott's unopposed motion for leave to file a second amended

6  complaint ("SAC") adding additional named plaintiffs from California, New York, Massachusetts,

7  and Washington, and additional state law claims.  *See* Order, ECF 90; SAC, ECF 91.  Pursuant to

8  stipulation, the only named plaintiff from Washington and the only claim under Washington state

9  law were voluntarily dismissed on July 19, 2021.  *See* Stip., ECF 98.

10    The operative SAC now contains the following claims, asserted by named plaintiffs Steven

11  Robert Prescott, Donovan Marshall, Maria Christine Anello, Darlene Kittredge, Treahanna

12  Clemmons, and Susan Elizabeth Graciale, on behalf of the residents of California, New York, and

13  Massachusetts:  (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §

14  17200 *et seq.*; (2) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750

15  *et seq.*; (3) Quasi-Contract Claim for Restitution under California Law; (4) violation of New York

16  General Business Law § 349 *et seq.*; (5) violation of New York General Business Law § 350 *et*

17  *seq.*; (6) [dismissed]; and (7) violation of Massachusetts General Law Chapter 93A.

18    Plaintiffs seek certification of three classes:

19
20    <u>California Class</u>:  All residents of California who purchased Woolite laundry
      detergent with a label bearing the phrases "Color Renew" and/or "revives colors"
      from February 1, 2017 to the present.

21
22    <u>New York Class</u>:  All residents of New York who purchased Woolite laundry
      detergent with a label bearing the phrases "Color Renew" and/or "revives colors"
      from February 22, 2018 to the present.

23
24    <u>Massachusetts Class</u>:  All residents of Massachusetts who purchased Woolite
      laundry detergent with a label bearing the phrases "Color Renew" and/or "revives
      colors" from February 22, 2017 to the present.

25  **II.    LEGAL STANDARD**

26    Federal Rule of Civil Procedure 23 governs class certification.  "The party seeking class

27  certification has the burden of affirmatively demonstrating that the class meets the requirements of

28  [Rule] 23."  *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066 (9th Cir. 2021) (internal quotation

3

1    marks and citation omitted).  "As a threshold matter, a class must first meet the four requirements

2    of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

3    representation."  *Id*.

4        "In addition to Rule 23(a)'s requirements, the class must meet the requirements of at least

5    one of the three different types of classes set forth in Rule 23(b)."  *Stromberg*, 14 F.4th at 1066

6    (internal quotation marks and citation omitted); *see also Olean Wholesale Grocery Coop., Inc. v.*

7    *Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022).  "To qualify for the third category,

8    Rule 23(b)(3), the district court must find that 'the questions of law or fact common to class

9    members predominate over any questions affecting only individual members, and that a class

10   action is superior to other available methods for fairly and efficiently adjudicating the

11   controversy.'"  *Olean*, 31 F.4th at 664 (quoting Rule 23(b)(3)).

12       "Before it can certify a class, a district court must be satisfied, after a rigorous analysis,

13   that the prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied."  *Olean*, 31 F.4th at 664

14   (internal quotation marks and citation omitted).  "[P]laintiffs must prove the facts necessary to

15   carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance

16   of the evidence."  *Id*. at 665.  "In carrying the burden of proving facts necessary for certifying a

17   class under Rule 23(b)(3), plaintiffs may use any admissible evidence."  *Id*.

18   **III.   DISCUSSION**

19       Plaintiffs assert that that all four requirements of Rule 23(a) are satisfied in this case, and

20   that certification of a damages class is appropriate under Rule 23(b)(3).  Reckitt argues that

21   Plaintiffs have not satisfied the requirements of either Rule 23(a) or Rule 23(b)(3).

22       **A.   Rule 23(a) Requirements**

23           **1.   Numerosity**

24       Rule 23(a)(1) requires that the size of the proposed class be "so numerous that joinder of

25   all the class members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is

26   required; rather, the specific facts of each case must be considered."  *Litty v. Merrill Lynch & Co.*,

27   No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *3 (C.D. Cal. Apr. 27, 2015).  "[N]umerosity

28   is presumed where the plaintiff class contains forty or more members."  *Id*.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs submit evidence that between February 1, 2017 and September 30, 2020, Reckitt

2  sold approximately ██████████ bottles of Woolite laundry detergent labeled with the phrases

3  "revives colors" and/or "Color Renew," and that additional bottles bearing one or both of those

4  phrases were sold between October 1, 2020 and April 4, 2021.  *See* Kafka Decl. ¶ 5 & Exh. 2.

5  Based on the 2020 United States Census populations of California, New York, and Massachusetts,

6  those states' proportional shares of the Woolite products at issue are approximately ██████████

7  bottles for California, approximately ██████████ bottles for New York, and approximately

8  ██████ bottles for Massachusetts.  *See* Kafka Decl. ¶ 6.

9    While Reckitt does not dispute Plaintiffs' sales figures, Reckitt argues that Plaintiffs have

10  not shown that all putative class members were exposed to the color renew/revive representation.

11  Only 55% of the subject bottles displayed the phrase "COLOR RENEW" on the front label, and

12  Reckitt asserts that Plaintiffs have not shown that purchasers of the other 45% of the bottles

13  looked at the back label.  Reckitt's argument regarding classwide exposure to the color

14  renew/revive representation is addressed below in the context of other Rule 23 requirements.  For

15  purposes of the numerosity requirement, it is clear that each of the proposed classes would contain

16  thousands of members, even if the classes were limited to consumers who purchased Woolite

17  bottles bearing the phrase "COLOR RENEW" on the front label.

18    The Court finds that the numerosity requirement is satisfied.

19         **2.     Commonality**

20    Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common

21  to the class."  Fed. R. Civ. P. 23(a)(2).  The requirement cannot be satisfied by any common

22  question, however.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  "Commonality

23  requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Id.* at

24  349-50 (internal quotation marks and citation omitted).  The claim of common injury must depend

25  on a common contention "of such a nature that it is capable of classwide resolution – which means

26  that determination of its truth or falsity will resolve an issue that is central to the validity of each

27  one of the claims in one stroke."  *Id.* at 350.  "[C]ommonality only requires a single significant

28  question of law or fact."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012),

1    *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

2    31 F.4th 651 (9th Cir. 2022) (en banc).[2]

3            Plaintiffs argue that all putative class members were injured by Reckitt's false and

4    misleading labeling of Woolite laundry detergent.  Plaintiffs assert consumer protection claims

5    under California's UCL and CLRA, New York's General Business Law §§ 349 and 350, and

6    Massachusetts' General Law Chapter 93A.  Plaintiffs also asserts a quasi-contract claim for

7    restitution under California state law.  As a federal court sitting in diversity over Plaintiffs' state

8    law claims, this Court applies the substantive law of the relevant state.  *See Moore v. Mars*

9    *Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).  Plaintiffs argue that their claims raise a

10   number of common questions, including whether the color renew/revive representation on the

11   Woolite labels is false or deceptive, and whether it is material to a reasonable consumer.

12           All of Plaintiffs' statutory claims are governed by the reasonable consumer test.  *See*

13   *Moore*, 966 F.3d at 1017 (California's UCL and CLRA); *In re Scotts EZ Seed Litig.*, 304 F.R.D.

14   397, 409 (S.D.N.Y. 2015) (New York's General Business Law §§ 349 and 350); *Aspinall v. Philip*

15   *Morris Companies, Inc.*, 442 Mass. 381, 395-96 (2004) (Massachusetts' General Law Chapter

16   93A).  "Numerous courts have recognized that a claim concerning alleged misrepresentations on

17   packaging to which all consumers were exposed is sufficient to satisfy the commonality

18   requirement because it raises the common question of whether the packaging would mislead a

19   reasonable consumer."  *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL

20   4952519, at *5 (N.D. Cal. Sept. 25, 2018).  That commonality encompasses a quasi-contract claim

21   for restitution under California law where such claim is based on the same representation giving

22   rise to statutory labeling claims.  *See id.* at *13.  Based on these authorities, it appears that

23   Plaintiffs have identified at least two common questions – whether the color renew/revive

24   representation on Woolite detergent labels is false or deceptive, and whether it is material to a

25   reasonable consumer.

26

27   [2] In *Olean*, the Ninth Circuit *en banc* "overrule[d] the statement in *Mazza* that 'no class may be certified that contains members lacking Article III standing.'"  *Olean*, 31 F.4th at 682 n.32.  The

28   *Olean* court held that statement to be inapplicable "when a court is certifying a class seeking injunctive or other equitable relief."  *Id*.  Other aspects of *Mazza* "remain good law."  *Id*.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Reckitt argues that Plaintiffs have not satisfied the common question requirement because

2   they have neither demonstrated classwide exposure to the color renew/revive representation, nor

3   shown the existence of common evidence that may be used on a classwide basis to prove that the

4   representation is false or misleading.  In their reply, Plaintiffs contend that they have demonstrated

5   classwide exposure to the color renew/revive representation and have presented common evidence

6   that the representation is false or misleading.

7                              **a.      Classwide Exposure**

8   Reckitt points out that only 55% of the Woolite bottles at issue displayed the "COLOR

9   RENEW" language on the front label, and that 45% of the bottles displayed the "COLOR

10  RENEW" and/or "revives color" language only on the back label.  Reckitt argues that "Plaintiffs

11  submitted no evidence showing that proposed class members or the reasonable consumer reviews

12  the back label before purchase, let alone paid attention to the 'revives color' language."  Opp. at 8.

13  Reckitt submits evidence that two of the named plaintiffs did not rely on the back label when

14  purchasing Woolite detergent.  *See* Henry Decl. Exh. 8, Clemmons Dep. 143:19-144:11; Exh. 10,

15  Kittredge Dep. 83:2-9.  One of the named plaintiffs could not remember whether he saw the back

16  label before purchasing the detergent.  *See* Henry Decl. Exh. 11, Marshall Dep. 138:19-140:14.

17  Based on this record, Reckitt contends that exposure to the color renew/revive representation is

18  not established for purchasers of 45% of the Woolite bottles at issue.

19  "Under California law, class members in CLRA and UCL actions are not required to prove

20  their individual reliance on the allegedly misleading statements."  *Bradach v. Pharmavite, LLC*,

21  735 F. App'x 251, 254 (9th Cir. 2018).  "Instead, the standard in actions under both the CLRA and

22  UCL is whether members of the public are likely to be deceived."  *Id*. (internal quotation marks

23  and citation omitted).  "For this reason, courts have explained that CLRA and UCL claims are

24  ideal for class certification because they will not require the court to investigate class members'

25  individual interaction with the product."  *Id*. at 254-55.  Claims under New York's General

26  Business Law §§ 349 and 350 likewise do not require proof of reliance; labeling claims under

27  those statues turn on whether the label "was false, and if so, whether it was likely to mislead a

28  reasonable consumer acting reasonably under the circumstances."  *In re Scotts EZ Seed Litig.*, 304

1    F.R.D. at 409.  The same holds true for claims under Massachusetts' General Law Chapter 93A.

2    *See Aspinall*, 442 Mass. at 397 ("Neither an individual's smoking habits nor his or her subjective

3    motivation in purchasing Marlboro Lights bears on the issue whether the advertising was

4    deceptive.").  Consequently, Reckitt's argument premised on Plaintiffs' failure to show actual

5    reliance on the back label is misplaced.

6            It is undisputed that every putative class member purchased Woolite bottles displaying the

7    phrases "COLOR RENEW" and/or "revives color."  Plaintiffs argue, and the Court agrees, that

8    these phrases are so similar that they may be viewed collectively as a single representation

9    regarding the effect of Woolite detergent on clothing. *See In re First All. Mortg. Co.*, 471 F.3d

10   977, 992 (9th Cir. 2006) ("The class action mechanism would be impotent if a defendant could

11   escape much of his potential liability for fraud by simply altering the wording or format of his

12   misrepresentations across the class of victims.").  Reckitt does not argue to the contrary.  Plaintiffs

13   have established that the color renew/revive representation appeared in one or more forms on each

14   and every bottle of Woolite detergent sold to putative class members.  In general, "[w]here the

15   alleged misrepresentation appears on the label or packaging of each item being sold, class-wide

16   exposure to it may be inferred." *Zakaria v. Gerber Prod. Co.*, No. LA CV15–00200 JAK (Ex),

17   2016 WL 6662723, at *8 (C.D. Cal. Mar. 23, 2016); *see also McCrary v. Elations Co., LLC*, No.

18   EDCV 13-00242 JGB OP, 2014 WL 1779243, at *10 (C.D. Cal. Jan. 13, 2014) ("By definition,

19   class members were exposed to these labeling claims, creating a common core of salient facts.").

20           Reckitt correctly notes that some district courts have declined to infer classwide exposure

21   where the alleged misrepresentation is not "prominently displayed on the packaging." *Hadley v.*

22   *Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018); *see also Zakaria*, 2016 WL

23   6662723, at *8.  In *Hadley*, the district court concluded that "the 'wholesome goodness' phrase on

24   Nutri-Grain packaging was not sufficiently 'prominently displayed' to warrant an inference of

25   class-wide exposure." *Hadley*, 324 F. Supp. 3d at 1099-1100.  The phrase in question appeared on

26   the back panel of the Nutri-Grain packaging, in small font, and in the middle of a block of text.

27   *See id.*  In *Zakaria*, the district court likewise declined to infer classwide exposure with respect to

28   language that was not "prominently displayed" on the packaging. *Zakaria*, 2016 WL 6662723, at

United States District Court
Northern District of California

8

*8. The language at issue was in small font, in a block of text, and located on the back or inside cover of the product package. *See id.* Reckitt urges this Court to follow *Hadley* and *Zakaria* in adding a prominence requirement to the general rule that classwide exposure may be inferred where the alleged misrepresentation appears on the label of each product sold. Reckitt argues that "for about 43 percent of the ████████ units referred to in the Motion, the only reference to the renews/revives color claim is 'revives color' in small font size on the back – by no means 'prominently displayed' – within the graphic." Opp. at 20.

In their reply, Plaintiffs cite *Krommenhock*, in which the district court rejected the prominence requirement articulated in *Hadley* and *Zakaria*. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 565 (N.D. Cal. 2020). The *Krommenhock* court carefully reviewed the reasoning of *Hadley* and *Zakaria*, the cases cited by those decisions, and other relevant authorities. *See id.* Ultimately, the *Krommenhock* court concluded that California law does not support a requirement that an alleged misrepresentation must be prominently displayed on the label or packaging before classwide exposure may be inferred. *See id.* This Court agrees with *Krommenhock* that a prominence requirement is not supported by California law. Reckitt has not cited, nor has the Court discovered, any New York or Massachusetts cases imposing a prominence requirement. Accordingly, the Court finds that all putative class members were exposed to the color renew/revive representation, including those who purchased Woolite bottles displaying only the phrase "revives color" on the back label.

Even if prominence were required, the Court would find that requirement met in this case. The back label of all Woolite bottles at issue displayed the phrase "revives colors" as part of a prominent graphic that takes up the entire upper portion of the back label. *See* Henry Exh. 14, Tyrell Decl. ¶¶ 5-10. The present case therefore is distinguishable from *Hadley* and *Zakaria*, which involved language displayed in small font and buried in a block of text.

In conclusion, the Court finds that Plaintiffs have established classwide exposure to the color renew/revive representation, meaning that all putative class members "have suffered the same injury" as required by *Dukes*. *See Dukes*, 564 U.S. at 349-50.

United States District Court
Northern District of California

United States District Court
Northern District of California

### b.      Common Evidence

Reckitt contends that the commonality requirement is not satisfied because Plaintiffs have not shown the existence of common evidence that may be used on a classwide basis to prove that the color renew/revive representation was false or misleading.  "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial."  *Olean*, 31 F.4th at 666-67.  "While such an analysis may entail some overlap with the merits of the plaintiff's underlying claim, the merits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id*. at 667 (internal quotation marks, citations, and brackets removed).  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Id*. (internal quotation marks and citation omitted).

Plaintiffs submit the opinion of their chemistry expert, Dr. Randy Meirowitz, who tested the Woolite products at issue and concluded that they do not renew or revive color in clothing. Reckitt challenges the admissibility of Dr. Meirowitz's opinion under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  For the reasons discussed below, the Court determines that Dr. Meirowitz's opinion is admissible and capable of establishing on a classwide basis that the color renew/revive representation was false or misleading.

Rule 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The Supreme Court's trilogy of cases addressing the admissibility of expert testimony – *Daubert*, 509 U.S. 579, *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) – require the district court to play a "gatekeeping" role, ensuring that any expert opinion admitted is both relevant and reliable.  So long as an expert's methodology is sound and his opinions satisfy

1   the requirements of Rule 702, underlying factual disputes and how much weight to accord the

2   expert's opinion are questions for the jury.  *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir.

3   2010).

4          Dr. Meirowitz has a Ph.D. in chemistry and more than 30 years of experience in surface

5   science, including the testing of textiles.  *See* Kafka Decl. Exh. 27, Meirowitz Report ¶¶ 12-14.

6   He designed and oversaw testing to determine whether Woolite laundry detergent renews or

7   revives color in clothing.  *See id.* ¶¶ 38-47.  The testing was based on American Association

8   Textile Chemists and Colorists ("AATCC") protocols, the industry standard for the testing of

9   textiles in the United States.  *See id.* ¶¶ 31-34.  Dr. Meirowitz states that in his experience, the

10  standardized tests from the AATCC are widely accepted for use in testing clothing.  *See id.* ¶ 34.

11         The testing was conducted at an accredited laboratory, TexTest Laboratories in Columbus,

12  Georgia.  *See* Kafka Decl. Exh. 27, Meirowitz Report ¶ 40.  Dr. Meirowitz elected to use eight

13  samples of cotton clothing for the test, four navy blue t-shirts and four red t-shirts.  *See id.* ¶ 35.

14  The t-shirts were washed with detergent from a 150-ounce bottle of Woolite Darks laundry

15  detergent purchased in 2019.  *See id.* ¶ 36.  The front label of the Woolite bottle displayed the

16  phrase "COLOR RENEW," and the back label displayed the phrases "COLOR RENEW" and

17  "revives colors."  *See id.*  Pursuant to the instructions on the detergent bottle, the t-shirts were

18  machine washed in cold water twenty-five times.  *See id.* ¶ 41.  A Datacolor spectrophotometer

19  was used to measure the color of the unwashed t-shirts and then the color of the t-shirts at 1, 2, 10,

20  15, and 25 washes.  *See id.* ¶ 42.  All eight t-shirts lost a substantial amount of color after 10

21  washes.  *See id.* ¶ 44.  The t-shirts continued to lose a substantial amount of color between 10 and

22  25 washes.  *See id.*  Based on this testing, Dr. Meirowitz concluded that Woolite laundry detergent

23  does not renew or revive color in clothing.  *See id.* ¶ 45.

24         Reckitt contends that Dr. Meirowitz's test is inadmissible under Rule 702 and the *Daubert*

25  line of cases because it did not analyze the relevant question of whether Woolite laundry detergent

26  renews or revives color in clothing.  Plaintiffs allege that they understood the color renew/revive

27  representation to mean that Woolite detergent would bring color *back* to their clothing.  Reckitt

28  argues that Dr. Meirowitz did not test whether that was true, because he started with new t-shirts,

United States District Court
Northern District of California

1    and color cannot be brought back to new clothing.  In their reply, Plaintiffs point out that Dr.

2    Meirowitz's testing showed loss of color between 0 and 10 washes, and additional loss of color

3    between 10 and 25 washes.  *See* Kafka Decl. Exh. 27, Meirowitz Report ¶ 44.  Thus, even if the

4    first wash did not provide an opportunity for the Woolite detergent to bring color back to the t-

5    shirts, that opportunity was provided at all subsequent washes.  By wash 10, the t-shirts no longer

6    qualified as new.  However, color continued to be lost between wash 10 and wash 25.  The Court

7    finds Reckitt's challenge to Dr. Meirowitz's methodology to be without merit.

8         Reckitt asserts that Dr. Meirowitz's testing was not reliable because he did not control for

9    all potential causes of color change, citing to his deposition testimony.  *See* Henry Exh. 3,

10   Meirowitz Dep. 21:20-22.  Prior to the cited portion of his deposition transcript, Dr. Meirowitz

11   had been asked whether he understood that Reckitt's color renew/revive representation was based

12   on removal of pilling and fuzz from fabric.  *See id.* 20:22-21:9.  Dr. Meirowitz stated that he had

13   reviewed documents on Reckitt's new chemical formulation and its effect on cotton fabric, but

14   that during testing "[t]he probe was into color renewal, not quantifying a method and excluding

15   any other possibilities for color change."  *Id.* 21:20-22.  That testimony does not undermine Dr.

16   Meirowitz's testing results; rather it confirms that Dr. Meirowitz tested for color renewal and not

17   anything else.

18        Finally, Reckitt argues that Dr. Meirowitz's opinion is inadmissible because he did not

19   personally wash the t-shirts but instead relied on the report created by TexTest, the accredited

20   laboratory that performed the test Dr. Meirowitz designed.  According to Reckitt, the TexTest

21   report is inadmissible hearsay, and any opinion based on that hearsay is inadmissible.  Under

22   Federal Rule of Evidence 703, "An expert may base an opinion on facts or data in the case that the

23   expert *has been made aware of* or personally observed."  Fed. R. Evid. 703 (emphasis added).  "If

24   experts in the particular field would reasonably rely on those kinds of facts or data in forming an

25   opinion on the subject, they need not be admissible for the opinion to be admitted."  *Id.*  In this

26   manner, "Rule 703 relaxes, for experts, the requirement that witnesses have personal knowledge of

27   the matter to which they testify."  *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994).

28   "Experts may offer opinions based on otherwise inadmissible testimonial hearsay if experts in the

United States District Court
Northern District of California

particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, and if they are applying their training and experience to the sources before them and reaching an independent judgment, as opposed to merely acting as a transmitter for testimonial hearsay." *Erhart v. BofI Holding, Inc.*, 445 F. Supp. 3d 831, 839 (S.D. Cal. 2020) (internal quotation marks, citations, and brackets omitted).  Based on these authorities, the Court finds that Dr. Meirowitz's reliance on testing performed by TexTest does not render his opinion inadmissible.

> *Caldwell* and *Mejia*, cited by Reckitt, stand for the proposition that "expert witnesses may not simply repeat hearsay without bringing their expertise to bear" on it.  *Caldwell v. City of San Francisco*, No. 12-CV-01892-DMR, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) (internal quotation marks, citation, and brackets omitted); *see also United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) ("The expert may not, however, simply transmit that hearsay to the jury. . . . Instead, the expert must form his own opinions by 'applying his extensive experience and a reliable methodology' to the inadmissible materials.").  *Caldwell* and *Mejia* are inapplicable here, because Dr. Meirowitz brought his own expertise to bear in designing and analyzing the testing performed by TexTest.

> Having determined that Dr. Meirowitz's opinion is admissible and capable of establishing that the color renew/revive representation was false or misleading, the Court need not address Plaintiffs' additional proffered evidence of falsity.

### c.      Conclusion Re Commonality

> The Court finds that Plaintiffs have identified common questions that are central to the validity of all claims remaining in the SAC.  The Court finds Reckitt's arguments that Plaintiffs have not established classwide exposure, or the existence of common evidence, to be without merit.

> The Court finds that the commonality requirement is satisfied.

### 3.      Typicality

> Rule 23(a)(3) requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Typicality is satisfied "when each class member's

1    claim arises from the same course of events, and each class member makes similar legal

2    arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir.

3    2010) (internal quotation marks and citation omitted).  "The requirement is permissive, such that

4    representative claims are typical if they are reasonably coextensive with those of absent class

5    members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116

6    (9th Cir. 2017) (internal quotation marks and citation omitted).  However, "[a] court should not

7    certify a class if there is a danger that absent class members will suffer if their representative is

8    preoccupied with defenses unique to it." *Id.* (internal quotation marks and citation omitted).

9        Plaintiffs assert that the typicality requirement is satisfied because all claims, including

10   their own and those of putative class members, arise from exposure to the same color renew/revive

11   representation on Woolite labels.  Reckitt suggests that three of the six named plaintiffs –

12   Clemmons, Kittredge, and Marshall – are not typical because they did not review the back label

13   before purchase.  The cited evidence establishes that Clemmons and Kittredge did not rely on the

14   back label, and that Marshall could not remember whether he saw the back label before purchasing

15   the Woolite detergent.  *See* Henry Decl. Exh. 8, Clemmons Dep. 143:19-144:11; Exh. 10,

16   Kittredge Dep. 83:2-9; Exh. 11, Marshall Dep. 138:19-140:14.  This evidence does not render

17   those plaintiffs atypical, however.  As discussed above, Plaintiffs' claims do not require proof of

18   actual reliance on the color renew/revive representation.  Plaintiffs need show only that they were

19   exposed to that representation.  Plaintiffs have established classwide exposure to the color

20   renew/revive representation, because every bottle of Woolite detergent at issue displayed the

21   phrase "COLOR RENEW" and/or the phrase "revives colors."

22       The Court finds that the typicality requirement is satisfied.

23              **4.      Adequacy**

24       To determine Plaintiffs' adequacy as class representatives, the Court "must resolve two

25   questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

26   class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

27   on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)

28   (internal quotation marks and citation omitted).  The record does not reflect any conflicts of

United States District Court
Northern District of California

14

1    interest.  Plaintiffs and their counsel have demonstrated their ability and intention to prosecute this

2    action vigorously on behalf of the class.  Reckitt does not challenge Plaintiffs' adequacy as class

3    representatives.

4         The Court finds that the adequacy requirement is satisfied.

5         **B.      Rule 23(b)(3)**

6         "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must

7    show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem Prod., Inc. v.*

8    *Windsor*, 521 U.S. 591, 614 (1997).  Plaintiffs seek certification under Rule 23(b)(3).  A class may

9    be certified under Rule 23(b)(3) only if "the court finds that the questions of law or fact common

10   to class members predominate over any questions affecting only individual members, and that a

11   class action is superior to other available methods for fairly and efficiently adjudicating the

12   controversy."  Fed. R. Civ. P. 23(b)(3).  "Further, parties seeking to certify a Rule 23(b)(3) class

13   must also demonstrate that the class is sufficiently ascertainable."  *Datta v. Asset Recovery Sols.,*

14   *LLC*, No. 15-CV-00188-LHK, 2016 WL 1070666, at *2 (N.D. Cal. Mar. 18, 2016).

15            **1.      Ascertainability**

16        "[A] class is ascertainable if the class is defined with objective criteria and if it is

17   administratively feasible to determine whether a particular individual is a member of the class."

18   *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2015 WL 7015567, at *13 (N.D. Cal. Nov. 12, 2015)

19   (internal quotation marks and citation omitted).  Plaintiffs do not expressly address the issue of

20   ascertainability.  However, the class definitions in this case rely on objective criteria – purchase of

21   Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors"

22   during the relevant class period.  Reckitt does not dispute the ascertainability of the putative

23   classes.

24        The Court finds that the putative classes are ascertainable.

25            **2.      Predominance of Common Questions**

26        "When one or more of the central issues in the action are common to the class and can be

27   said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

28   important matters will have to be tried separately, such as damages or some affirmative defenses

United States District Court
Northern District of California

1    peculiar to some individual class members." *Olean*, 31 F.4th at 668 (internal quotation marks and

2    citation omitted).  The plaintiffs need not show that they are likely to succeed on the common

3    issues in the case.  *See id.* at 667.  "[A] district court cannot decline certification merely because it

4    considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to

5    succeed in carrying the plaintiffs' burden of proof on that issue."  *Id*.  If the plaintiffs present

6    evidence that could sustain a reasonable jury verdict on the merits of a common question as to all

7    class members, a district court may conclude that the plaintiffs have carried their burden under

8    Rule 23(b)(3).  *See id.*

9         Plaintiffs assert that common questions of law and fact predominate over individual

10   questions in this case.  As discussed above in the context of the Rule 23(a)(2) commonality

11   inquiry, Plaintiffs have demonstrated the existence of substantial common questions relating to

12   liability.  Plaintiffs have shown that all putative class members were exposed to the color

13   renew/revive representation, and have presented common evidence (Dr. Meirowitz's opinion) that

14   the representation was false.  In addition, Plaintiffs have shown that their statutory claims are

15   governed by an objective reasonable consumer test, and that none of their claims require proof of

16   individual reliance.

17        Reckitt suggests that the graphic on the back label impacts the predominance inquiry,

18   asserting that "[a]ny consumer reviewing the back label would understand that the Woolite

19   Laundry Detergent revives colors by smoothing rough fibers and removing pilling and fuzz."

20   Opp. at 22.  Reckitt argues that "[a]t a minimum, individual issues predominate as to whether a

21   class member viewed the back label, and, if so, whether he or she understood how the product

22   would work and on which types of fabric."  *Id*.  This argument is misplaced, because Plaintiffs

23   need not show that any putative class member actually reviewed and relied on the back label to

24   prevail on their claims.

25        Based on the foregoing, the Court has no difficulty concluding that Plaintiffs have met

26   their burden to show that common questions of law and fact predominate over individual

27   questions relating to liability.  That is not the end of the predominance inquiry, however.  "Rule

28   23(b)(3)'s predominance requirement takes into account questions of damages." *Just Film*, 847

United States District Court
Northern District of California

16

1    F.3d at 1120.  Plaintiffs must propose a damages model that is consistent with its theory of

2    liability and capable of measuring damages on a classwide basis.  *See Comcast Corp. v. Behrend*,

3    569 U.S. 27, 34-35 (2013).

4            Plaintiffs' theory of liability is that the color renew/revive misrepresentation on the

5    Woolite labels caused putative class members to overpay for the detergent.  Plaintiffs seek to

6    recover, as restitution or damages, the "price premium" attributable to the color renew/revive

7    feature they thought they were getting but did not receive.  "The difference between what the

8    plaintiff paid and the value of what the plaintiff received is a proper measure of restitution in UCL

9    cases."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).  Plaintiff also seeks this

10   measure of restitution under their quasi-contract theory, which is based on the same facts as their

11   UCL and CLRA claims.  With respect to the CLRA claim, the price premium is an appropriate

12   measure of recovery for product mislabeling.  *See Brazil v. Dole Packaged Foods*, LLC, No. 12-

13   CV-01831-LHK, 2014 WL 5794873, at *5 (N.D. Cal. Nov. 6, 2014).  The price premium also is

14   an appropriate measure of damages under New York's General Business Law §§ 349 and 350.

15   *See Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 275 (E.D.N.Y. 2019).  Finally, the price

16   premium is an appropriate measure of damages under Massachusetts' General Law Chapter 93A.

17   *See Aspinall*, 442 Mass. at 399 (approving damages measured by "the difference between the price

18   paid by the consumers and the true market value of the 'misrepresent[ed]' cigarettes they actually

19   received").[3]

20           Plaintiffs offer the opinion of their damages expert, Gregory Pinsonneault, to quantify the

21   price premium paid by the putative class and attributable to the color renew/revive representation

22   on the Woolite labels.  *See* Kafka Decl. Exh. 20, Pinsonneault Report; Exh. 17, Pinsonneault

23   Reply Report.  Mr. Pinsonneault has a Bachelor of Science in computer science, a Bachelor of

24   Arts in economics and mathematics, and a Master of Arts degree in economics.  *See* Kafka Decl.

25   Exh. 20, Pinsonneault Report ¶ 6.  He has worked as a consultant for nineteen years and currently

26

27   _____

[3] As an alternative to the price premium, statutory damages are available under New York's
General Business Law §§ 349 and 350 and Massachusetts' General Law Chapter 93A.  Plaintiffs
28   do not seek statutory damages in this case, however – they seek the price premium as the measure
of classwide restitution and damages.

1    is the managing director and chief executive officer of a financial and economic consulting firm.

2    *See id.* ¶¶ 4, 7.

3           Mr. Pinsonneault opines that the price premium each class member paid as a result of the

4    color renew/revive representation may be calculated as ▉% of the purchase price. *See* Kafka

5    Decl. Exh. 20, Pinsonneault Report ¶ 64. Mr. Pinsonneault selected the ▉% figure based on

6    Reckitt's implementation of a ▉% increase in its wholesale prices in conjunction with its new

7    Woolite marketing campaign. *Id.* ¶ 35. In Mr. Pinsonneault's view, Reckitt's internal materials

8    clearly tie the ▉% price increase to the color renew/revive representation. *See id.* ¶¶ 36-43. Mr.

9    Pinsonneault concludes that "the Color Renew/Revive misrepresentations were the driver of the

10   ▉% price increase." *Id.* ¶ 43.

11          In reaching that conclusion, Mr. Pinsonneault considered and rejected alternative

12   explanations for the price increase offered by Christopher Tedesco, Reckitt's General Manager of

13   United States Marketing for Hygiene. *See* Kafka Decl. Exh. 20, Pinsonneault Report ¶¶ 44-53.

14   Mr. Tedesco testified at his deposition that the color renew/revive marketing campaign was a

15   factor in the decision to implement the ▉% price increase, but that other factors played into that

16   decision as well, including: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

17   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

18   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

19   ▉▉▉▉▉▉    *See id.* Mr. Pinsonneault asserts Mr. Tedesco's explanation that Reckitt raised the

20   price of Woolite ▉% due to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ is not economically rational.

21   *See id.* ¶ 46. According to Mr. Pinsonneault, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ generally

22   will decrease demand for the product, which in turn will lead to a decrease in prices. *See id.* Mr.

23   Pinsonneault also opines that none of the factors identified by Mr. Tedesco, other than the color

24   renew/revive campaign, would increase demand for Woolite detergent, and therefore none of those

25   factors provide an economic justification for the ▉% price increase. *See id.* ¶¶ 52-53.

26          Mr. Pinsonneault notes that the new Woolite detergent formula appears to be less

27   expensive than the prior formula. *See* Kafka Decl. Exh. 20, Pinsonneault Report ¶¶ 54. He

28   explains that usually a reduction in production costs would be expected to result in lower prices.

United States District Court
Northern District of California

*See id.*  However, Reckitt raised prices.  Mr. Pinsonneault opines that the only change that occurred around the time of the ██% price increase was the color renew/revive marketing.  *See id.* ¶ 55.  He concludes that the ██% increase is a reasonable measure of the impact that the color renew/revive representation had on the price.  *See id.* ¶ 56.  Mr. Pinsonneault acknowledges that there was no price increase on the ████████ size of Woolite Gentle Cycle detergent and Woolite Darks detergent.  *See id.* ¶¶ 60-61.  However, he concludes that Reckitt's decision not to implement a previously planned price decrease as to those products is attributable to the color renew/revive campaign.  *See id.*

Recognizing that the ██% increase was with respect to wholesale prices, Mr. Pinsonneault explains that the general economic rule is that price increases flow through to retail prices.  *See Kafka Decl. Exh. 20, Pinsonneault Report* ¶ 62.  He opines that Woolite products do not have the characteristics of the types of products for which a wholesale price increase is not passed through to the consumer.  *See id.*  Mr. Pinsonneault therefore concludes that it is reasonable to use the ██% figure to approximate the price premium paid by each class member and attributable to the color renew/revive representation on the label.  *See id.* ¶ 72.  He lays out the mechanics of that calculation and states that it may performed on a classwide basis regardless of variations in the actual prices paid by individual class members.  *See id.* ¶ 73.

Reckitt contends that Plaintiffs' "damages model is not tethered to their theory of liability" as required under *Comcast* in order to satisfy Rule 23(b)(3).  Opp. at 23.  In *Comcast*, the plaintiffs initially relied on four theories of antitrust liability and calculated aggregate damages based on those four theories.  *See Comcast*, 569 U.S. at 36-37.  However, the district court certified the class based on only one of the four theories.  *See id*. at 35.  The plaintiffs did not offer a method of calculating damages for liability stemming from that theory alone.  *See id*.  Pointing out that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that [surviving] theory," the Supreme Court determined that "[i]f the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id*.  The Ninth Circuit has "interpreted *Comcast* to mean that plaintiffs must be able to show that their damages stemmed

1   from the defendant's actions that created the legal liability." *Vaquero v. Ashley Furniture Indus.,*

2   *Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (internal quotation marks and citation omitted).  In the

3   present case, the damages model articulated by Mr. Pinsonneault is firmly tethered to Plaintiffs'

4   theory of liability.  Plaintiffs seek to recover the price premium they paid for the color

5   renew/revive feature promised on the Woolite labels.  The price premium is an appropriate

6   measure of recovery for all of their claims.  Mr. Pinsonneault's damages model is designed to

7   calculate that price premium for each class member.  "Therefore, even if the measure of damages

8   proposed here is imperfect, it cannot be disputed that the damages (if any are proved) stemmed

9   from *Defendant['s]* actions." *Vaquero*, 824 F.3d at 1155.

10          Reckitt's real quibble with Plaintiffs' damages model is the method by which Mr.

11   Pinsonneault proposes to calculate the price premium.  Reckitt does not assert a *Daubert* challenge

12   to Mr. Pinsonneault's opinion.  However, Reckitt cites numerous cases in which damages models

13   were rejected, and it argues that Plaintiffs' damages model suffers from similar defects.  In *Brazil*,

14   a consumer class action based on alleged misrepresentations in product labeling, the district court

15   initially approved the plaintiffs' use of a regression model to calculate the price premium

16   attributable to the allegedly misleading label statements.  *See Brazil*, 2014 WL 5794873, at *5.

17   The district court subsequently decertified the class in part, finding that the plaintiffs' regression

18   model failed to isolate a price premium attributable to the labeling claim.  *See id.*  In *Zakaria*, the

19   Ninth Circuit affirmed the district court's decertification of a product labeling class that initially

20   had been certified based on a damages model using conjoint analysis.  *Zakaria v. Gerber Prod.*

21   *Co.*, 755 F. App'x 623, 624 (9th Cir. 2018).  The Ninth Circuit determined that the conjoint

22   analysis showed only how much consumers subjectively valued the labeling at issue, but did not

23   contain any evidence that consumers had paid higher prices based on that labeling.  *See id.* at 624-

24   25.  In *In re Graphics Processing Units*, the district court found that the plaintiffs' damages model

25   did not support class certification, because it did not demonstrate how pass-through of wholesale

26   pricing to retailers could be established absent a wholesaler-by-wholesaler and re-seller-by-re-

27   seller investigation.  *See In re Graphics Processing Units*, 253 F.R.D. 478, 505 (N.D. Cal 2008).

28          These cases are factually distinguishable from the present case, in which Mr. Pinsonneault

*United States District Court*
*Northern District of California*

20

1    uses Reckitt's documented ██% price increase as an approximation for the price premium.  Mr.

2    Pinsonneault explains how he isolated the price premium paid for the color renew/revive

3    representation by discounting other explanations for the ██% price, addressing the problem raised

4    in *Brazil*.  Unlike the model in *Zakaria*, Mr. Pinsonneault's model is based on an actual ██%

5    priced increase implemented by Reckitt, not on a mere hypothetical.  *In re Graphics Processing*

6    *Units* was an antitrust case in which calculation of damages was complicated by an intricate

7    distribution chain involving multiple distribution channels.  That court's discussion of pass-

8    through in circumstances very different from those in this case is not particularly helpful.

9           "In calculating damages, here restitution, California law requires only that some reasonable

10   basis of computation of damages be used, and the damages may be computed even if the result

11   reached is an approximation."  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th

12   Cir. 2015) (internal quotation marks and citation omitted).  In *Nguyen*, the Ninth Circuit reversed

13   the district court's denial of class certification in a consumer class action alleging that the

14   defendants sold vehicles with a faulty clutch system.  *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811

15   (9th Cir. 2019).  The plaintiff sought to recover damages equaling the amount he purportedly

16   overpaid in purchasing a vehicle with a defective clutch, and his damages model used the cost of

17   replacing the defective clutch as a proxy for the amount of his overpayment.  *See id*. at 821.  The

18   Ninth Circuit found that the plaintiff's damages model satisfied *Comcast*, stating that "[w]hether

19   his proposed calculation of the replacement cost is accurate, whether the clutch was actually

20   defective, and whether Nissan knew of the alleged defect are merits inquiries unrelated to class

21   certification."  *Id*.  The Ninth Circuit concluded that, "For now, it is sufficient that Plaintiff has

22   demonstrated the nexus between his legal theory – that Nissan violated California law by selling

23   vehicles with a defective clutch system that was not reflected in the sale price – and his damages

24   model – the average cost of repair."  *Id*.

25          In the present case, this Court likewise finds that, at the class certification stage, it is

26   sufficient that Plaintiffs have demonstrated a nexus between their legal theory and their damages

27   model.  Whether Mr. Pinsonneault's proposed calculation for the price premium is accurate is a

28   question to be decided at a later date.

1   The Court finds that the predominance requirement of Rule 23(b)(3) is satisfied.

2           **3.**        **Superiority of Class Action**

3   To satisfy Rule 23(b)(3), Plaintiffs must demonstrate that "a class action is superior to

4   other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

5   23(b)(3). Rule 23 lists the following factors that Courts should consider in making this

6   determination: "(A) the class members' interests in individually controlling the prosecution or

7   defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

8   already begun by or against class members; (C) the desirability or undesirability of concentrating

9   the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a

10  class action." Fed. R. Civ. P. 23(b)(3).

11  Plaintiffs assert that class members' interests in bringing separate actions is minimal, as

12  any recovery under such an action would be dwarfed by the cost of litigation. Plaintiffs state that

13  there are no other relevant cases pending. Defendant consented to Plaintiffs' addition of state law

14  claims from other jurisdiction – New York and Massachusetts – to this suit. Finally, the issues

15  presented by this action are manageable given the defined class and the existence of common

16  proof regarding central issues. Reckitt does not offer any argument regarding these factors and the

17  Court finds Plaintiffs' arguments to be persuasive.

18  The Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

19  **IV.   ORDER**

20      (1)    Plaintiffs' motion for class certification is GRANTED.

21      (2)    Pursuant to Federal Rule of Civil Procedure 23, the Court hereby certifies the

22          following Classes:

23          (a)    California Class: All residents of California who purchased Woolite

24              laundry detergent with a label bearing the phrases "Color Renew" and/or

25              "revives colors" from February 1, 2017 to the present.

26          (b)    New York Class: All residents of New York who purchased Woolite

27              laundry detergent with a label bearing the phrases "Color Renew" and/or

28              "revives colors" from February 22, 2018 to the present.

United States District Court
Northern District of California

<div style="text-align: left; writing-mode: vertical-lr;">United States District Court<br>Northern District of California</div>

1

2

3    (c)     Massachusetts Class:  All residents of Massachusetts who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 22, 2017 to the present.

4    (3)     Excluded from the Classes are the Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

9    (4)     The Court appoints Steven Prescott, Donovan Marshall, and Treahanna Clemmons as class representatives for the California Class; Maria Christine Anello as class representative for the New York Class; Darlene Kittredge and Susan Graciale as class representatives for the Massachusetts Class; and Eric Kafka of Cohen Milstein Sellers & Toll as class counsel for the Classes.

14    (5)     Notice shall be provided to the Classes as required under Rule 23.

15    (6)     This order terminates ECF 111.

Dated:  July 14, 2022

_____

BETH LABSON FREEMAN
United States District Judge

23