ERIC KAFKA (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

VICTORIA NUGENT (*pro hac vice*)
GEOFFREY GRABER (SBN 211547)
BRIAN JOHNSON (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
vnugent@cohenmilstein.com
ggraber@cohenmilstein.com
bejohnson@cohenmilstein.com

THEODORE LEOPOLD (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
tleopold@cohenmilstein.com

*Counsel for Plaintiffs and Classes*

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| STEVEN ROBERT PRESCOTT, DONOVAN MARSHALL, MARIA CHRISTINE ANELLO, DARLENE KITTREDGE, TREAHANNA CLEMMONS, and SUSAN ELIZABETH GRACIALE, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RECKITT BENCKISER LLC, <br><br> Defendant. | Case No.: 5:20-cv-02101-BLF <br><br> **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF SETTLEMENT** <br><br> Date: September 14, 2023 <br> Time: 9:00 AM <br> Judge: Hon. Beth L. Freeman |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on September 14, 2023, at 9:00 a.m., or as soon thereafter as counsel may be heard, Plaintiffs will and hereby do respectfully move the Court, before the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, for an order preliminarily approving the proposed class action settlement and approving the manner and form of class notice.

This motion is based on the notice of motion and motion for preliminary approval, the following memorandum of points and authorities, the attached declarations and exhibits, and any other matters in the record or that properly come before the Court.

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................... 1

**FACTUAL BACKGROUND AND HISTORY OF THE LITIGATION** ................................ 2

**OVERVIEW OF THE SETTLEMENT** ........................................................................ 4

I.     THE PROPOSED SETTLEMENT CLASSES ........................................................ 4

II.    NON-REVERSIONARY SETTLEMENT FUND ..................................................... 5

III.   THE SCOPE OF CLASS MEMBERS' RELEASE OF CLAIMS .................................. 6

IV.   ATTORNEYS' FEES, COST REIMBURSEMENTS, AND SERVICE AWARDS ........ 7

**THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT
AND DIRECT NOTICE TO THE SETTLEMENT CLASS** ...................................... 8

I.     THE PROPOSED SETTLEMENT MERITS APPROVAL ........................................ 9

     A.    Plaintiffs and their counsel have adequately represented the class......................... 9

     B.    The parties negotiated the proposed settlement at arm's length. .......................... 10

     C.    The quality of relief to the class weighs in favor of approval. ............................ 11

           1.    The settlement provides strong relief for the class. ................................ 11

           2.    Continued litigation would entail substantial cost, risk, and delay.......... 12

           3.    The proposed award of attorneys' fees also support approval................. 13

           4.    The parties have no other agreements pertaining to the settlement. ......... 13

     D.    The settlement treats all settlement class members equitably. ............................. 13

**THE SETTLEMENT PROVIDES THE BEST NOTICE PRACTICABLE** ........................ 14

**THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL** ......................... 16

**CONCLUSION** ................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altamirano v. Shaw Indus., Inc.*,
No. 13-cv-00939, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ...........................14

*Boyd v. Bank of Am. Corp.*,
No. 13-cv-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014).....................14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ...........................................11

*Cowen v. Lenny & Larry's Inc.*,
1:17-cv-01530 (N.D. Ill.) (final approval granted May 2, 2019)...........................15

*Harris v. Vector Mktg. Corp.*,
No. 08-cv-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .....................14

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .........................................12

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ........................................................7

*Kukorinis v. Walmart, Inc.*,
1:19-cv-20592 (S.D. Fla.) (final approval granted Sept. 20, 2021).........................15

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ...................................................11, 12

*Messineo v. Ocwen Loan Servicing, LLC*,
No. 15-CV-02076-BLF, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017)....................11

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................11

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) .......................................13

*Steiner v. Am. Broad. Co.*,
248 F. App'x 780 (9th Cir. 2007) ..................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs, & Prod. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ..................................................9, 10, 11

*Wannemacher v. Carrington Mortg. Servs., LLC*,
No. 12-cv-2016, 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014)...........................10

**Statutes**

28 U.S.C. § 1715..................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................... *passim*

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 5:20-cv-02101-BLF

## INTRODUCTION

The parties have finalized a proposed class settlement that is ready to undergo the court-approval process. As the Court may recall from earlier proceedings, this suit pertains to Defendant Reckitt Benckiser LLC's ("Reckitt") sale of Woolite Gentle Cycle and Darks laundry detergent with labels bearing the phrases "Color Renew" and/or "revives colors." Plaintiffs allege that Reckitt's color revival representation is false and deceptive because Woolite laundry detergent does not renew or revive color in clothing. In July 2021, this Court certified three classes of California, New York, and Massachusetts purchasers.

While Plaintiffs believe both the facts and the law ultimately favored their position, the proposed settlement is poised to deliver meaningful relief without requiring further delay and expense. The settlement provides a $3.275 million **non-reversionary** cash fund from Reckitt. This is an exceptionally strong result for the class given that Plaintiffs' expert estimated that price premium damages for all three classes would total $3.7 million. From the Plaintiffs' perspective, this settlement provides strong value to the class in exchange for its release of claims and is thus worthy of the Court's approval. In support of this motion, Plaintiffs attach a copy of the parties' settlement agreement, including exhibits. *See* Declaration of Eric Kafka, Exhibit 1 (the "Settlement"). For the reasons discussed in this motion, Plaintiffs respectfully request that the Court preliminarily approve the settlement, direct notice to the class, appoint Class Counsel under Rule 23(g), and set a schedule for final approval.

## **FACTUAL BACKGROUND AND HISTORY OF THE LITIGATION**

This case arises from Plaintiffs' and Class Members' purchase of Woolite Gentle Cycle or Darks laundry detergent with labels bearing the phrases "Color Renew" and/or "revives colors." Plaintiffs allege that Reckitt's color revival representation is false and deceptive because Woolite laundry detergent does not renew or revive color in clothing. *See e.g.,* ECF No. 110-2 at 7:1-20. Plaintiffs allege that Reckitt's color revival representation caused Plaintiffs and Class Members to pay a price premium for Woolite laundry detergent. *See e.g.,* ECF No. 91 ¶ 5.

For almost three years, this case has been fiercely contested. Over the last three years, the parties submitted briefing on Reckitt's motion to dismiss, completed extensive fact discovery, submitted briefing on class certification, completed extensive expert discovery (where eight experts submitted reports and were deposed), and submitted briefing on summary judgment. When the parties agreed to settle the case on March 15, 2023, the case was less than five months away from its August 7, 2023 trial date.

This action was initiated by Plaintiff Steven Prescott when filed the complaint on March 26, 2020. ECF No. 1. On May 26, 2020, Defendant filed a motion to dismiss Plaintiff Prescott's amended complaint. ECF No. 26. On December 3, 2020, the Court granted, in part, and denied, in part, Defendant's the motion to dismiss. ECF No. 70. The Court permitted Prescott to proceed with his claims for (1) violation of California's Unfair Competition Law ("UCL"), (2) violation of California's Consumer Legal Remedies Act ("CLRA"), and (3) California Quasi-Contract Claim for Restitution.

In March 2021, Plaintiffs filed a Second Amended Complaint, adding seven additional named plaintiffs and three new states. ECF No. 91. After two of the plaintiffs voluntarily dismissed their claims, the case proceeded with six Class Representatives (Steven Prescott, Donovan Marshall, Christine Anello, Darlene Kittredge, Treahanna Clemmons, and Susan Graciale) on behalf of three proposed state classes: California, New York, and Massachusetts.

The parties engaged in fact discovery. To prepare class members' claims for certification and trial, Plaintiffs' counsel reviewed more than 18,000 pages of Reckitt's documents, deposed 4

Reckitt employees, served three sets of interrogatories, and obtained documents through two third-party subpoenas. Kafka Decl. ¶ 4. The six named plaintiffs all sat for lengthy depositions and responded to Reckitt's requests for production. *Id*. ¶ 20. During discovery, the parties engaged in many meet-and-confer discussions. *Id*. ¶ 4. Through those efforts, they were able to resolve a great number of issues, but ultimately briefed 5 discovery disputes before Magistrate Judge Virginia K. DeMarchi. ECF Nos. 54, 55, 72, 101, and 102.

The parties also completed extensive expert discovery. Plaintiffs submitted reports from three experts: a chemist, an economist, and a marketing expert. Kafka Decl. ¶ 5. Plaintiffs relied on this expert evidence in support of class certification and in opposition to summary judgment. In response, Reckitt submitted expert reports from two chemists, an economist, and two marketing experts. *Id*. The parties deposed all eight experts, and Plaintiffs' expert economist was deposed twice. *Id*.

In November 2021, Plaintiffs moved for class certification on behalf of three statewide classes for California, New York, and Massachusetts. ECF No. 111. In moving for certification Plaintiffs marshalled the evidence from the extensive factual record, submitting more than 40 exhibits to the Court. After holding a hearing, in July 2022, the Court certified Plaintiffs' three proposed classes:

> (a) California Class: All residents of California who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 1, 2017 to the present.

> (b) New York Class: All residents of New York who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 22, 2018 to the present.

> (c) Massachusetts Class: All residents of New York who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 22, 2017 to the present.

ECF No. 143 at 22-23. The Court appointed Steven Prescott, Donovan Marshall, Treahanna Clemmons, Maria Christine Anello, Darlene Kittredge, and Susan Graciale as class

representatives. *Id*. at 23. The Court also appointed Eric Kafka of Cohen Milstein Sellers & Toll as class counsel for the Classes. *Id*. at 23.

On January 13, 2023, Defendant filed a motion for summary judgment and to exclude the opinions of Plaintiffs' marketing expert. ECF No. 156. In February 2023, the parties completed briefing on Defendant's summary judgment motion.

In February and March 2023, as they were preparing for the hearing on Defendant's motion for summary judgement, the parties engaged in intensified settlement discussions. Kafka Decl. ¶ 12. The parties' efforts built off their prior mediation sessions in July 2021 and March 2022 with the Honorable Laurel Beeler. *Id*. On March 15, 2023, the parties reached an agreement in principle to the material terms of a classwide settlement that fully resolves this litigation. ECF No. 170.

The parties have since prepared the formal settlement agreement now before the Court, which involved efforts to finalize the terms of the agreement, develop a notice and distribution plan, and prepare and finalize the agreement's exhibits and this motion. Plaintiffs also retained the services of an experienced settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") after soliciting competing bids from three potential administrators. Kafka Decl. ¶ 16. With the help of Epiq, the Plaintiffs developed a notice and funds-distribution plan, which is incorporated into the settlement agreement and detailed below.

## OVERVIEW OF THE SETTLEMENT

### I.     THE PROPOSED SETTLEMENT CLASSES

The settlement contemplates certification of the following settlement classes:

(a) California Class: "All residents of California who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 1, 2017 to May 1, 2023."

(b) New York Class: "All residents of New York who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 22, 2018 to May 1, 2023."

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 5:20-cv-02101-BLF

(c) Massachusetts Class: "All residents of Massachusetts who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 22, 2017 to May 1, 2023."[1]

Kafka Declaration, Ex. 1 (the "Settlement"), Section II.V.

The Northern District's preliminary approval guidelines direct settling parties to explain whether there are differences between the settlement class and the certified class (if a class has been certified).[2] Here, the class membership of the certified class and settlement class is identical. However, there is a minor wording difference between the settlement class definition and certified class definition. The class period end date for the certified class is "the present," while the class period end date for the settlement class is May 1, 2023. The parties believe that using a specific date (May 1, 2023) rather than "to the present" will be more understandable to potential class members. In any event, the membership of the certified class and settlement class is co-extensive: Reckitt did not sell any bottles of Woolite with labels bearing the phrases "color renew" or "revives colors" after June 2021. Kafka Decl. ¶ 15. Thus, the number of class members is the same regardless of whether the class period end date is May 1, 2023 or "the present."

## II.    NON-REVERSIONARY SETTLEMENT FUND

The parties' proposed settlement will deliver a settlement fund in the amount of $3,275,000.00. Kafka Decl., Ex. 1, Section IV.A. The settlement fund is **non-reversionary**. Kafka Decl., Ex. 1, Section IV. Thus, any residual or unclaimed money in the settlement funds in the settlement fund will not be returned to Reckitt. *Id*., Section IX.L. To distribute that fund among the members of the class, the parties have devised a plan of allocation that will pay class members on a *pro rata* basis based on the number of eligible Woolite laundry detergent bottles they

---

[1] Excluded from the Settlement Class are: (a) Reckitt, any entity in which Reckitt has a controlling interest, Reckitt's officers, directors, legal representatives, successors, subsidiaries and assigns; (b) any judge, justice or judicial officer presiding over this action or settlement conferences and the members of their immediate families and staff; (c) any person who timely and properly excludes himself or herself from the Settlement Class in accordance with Section VII(B) of this Agreement or as approved by the Court. Settlement, Section II.V.

[2] *See* N.D. Cal., *Proc. Guidance for Class Action Sett.* § 1.a.

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 5:20-cv-02101-BLF

1  purchased. *Id.*, Section IX.J.  The settlement fund will also cover all costs associated with the
2  settlement administration and class notice, attorneys' fees and litigation-cost reimbursements, and
3  plaintiff service awards. *Id.*, Section IV.A.1.

4      To assist in administering the claims process (and in administering the settlement
5  generally), Plaintiffs have retained the services of Epiq. Before selecting Epiq as the notice
6  administrator, Plaintiffs first received bids from three experienced and qualified administrators.
7  Kafka Decl. ¶ 16. Plaintiffs' counsel selected Epiq because, in Plaintiffs' counsel's judgment, Epiq
8  was offering the best practicable notice plan tailored to the specific needs of this case at a
9  reasonable price point. *Id*. ¶ 17. Epiq also utilizes extensive data security and privacy safeguards
10 for class member data. Declaration of Cameron Azari ("Azari Decl.") ¶¶ 10-16. And, Epiq
11 maintains adequate insurance in case of errors. Azari Decl. ¶ 10.

12     In the last two years, Cohen Milstein has worked with Epiq as the notice administrator
13 and/or settlement administrator in 11 matters where Cohen Milstein served as class counsel. Kafka
14 Decl. ¶ 17.  The quality of Epiq's work in those matters further supported its selection here. *Id.*

15 **III.    THE SCOPE OF CLASS MEMBERS' RELEASE OF CLAIMS**

16     In exchange for the benefits provided under the settlement, the Plaintiffs and settlement
17 class members will provide a release of claims against Reckitt and its parents, subsidiaries,
18 predecessors, successors, suppliers, retailers, and customers. Settlement, Section II.S.[3]

19     The release is limited to claims "relating to the labeling, advertising and marketing of the
20 Product and allegations that the Product caused fading or that otherwise relates in any way to
21 Reckitt's claims that Woolite laundry detergent renews or revives color in clothing, brings the

22

23

24     [3] The released persons are fully defined in the settlement agreement as, "Reckitt and each
25 of its current and former parents, subsidiaries, divisions, departments, affiliates and controlled
companies both inside and outside of the United States, predecessors, and successors, suppliers,
26 third-party retailers, customers, and assigns, including the present and former directors, officers,
27 employees, shareholders, agents, insurers, partners, privies, representatives, attorneys,
accountants, and all persons acting by, through, under the direction of, or in concert with them."
28 Kafka Decl. Ex. 1., Section II.S.

color back to clothing, used a Color Renew logo, and/or referred to 'Color Renew.'" Settlement, Section II.R.[4]

The Northern District's guidelines ask the parties to address whether the claims to be released differ from the claims in the operative claims. *See* N.D. Cal, Proc. Guidance for Class Action Sett. § 1.b. Here, the parties do not seek to release any claims other than those that were (or could have been) pleaded based on the facts alleged by Plaintiffs during the litigation. Such a release is appropriate, and typical. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

## IV.   ATTORNEYS' FEES, COST REIMBURSEMENTS, AND SERVICE AWARDS

Class Counsel have yet to be compensated for their litigation efforts. Having litigated the case for three years, while advancing hundreds of thousands of dollars in litigation expenses on behalf of the class, Class Counsel will file a motion at final approval requesting that the Court approve an award of 30% of the fund ($982,500.00) to pay their attorneys' fees. In addition, Class Counsel intends to seek reimbursement of their expenses incurred to prosecute this case. To date, Class Counsel has incurred approximately $350,000.00 in expenses. Kafka Decl. ¶ 19.

Plaintiffs will provide additional detail, consistent with Rule 23(h), when they file their formal fee motion. In that motion, Plaintiffs' counsel will provide a more thorough description of their efforts during the litigation, a more detailed accounting of their litigation costs, and cite

---

[4] The released claims are fully defined in the settlement agreement as, "any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee or expense, action, or cause of every kind and description that any Plaintiff, the Settlement Class or any member thereof had or have, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims, claims asserted on a class basis or on behalf of the general public, whether known or unknown, asserted or unasserted, suspected or unsuspected, latent or patent, that is, has been, could reasonably have been, or in the future might reasonably be asserted by Plaintiffs or members of the Settlement Class either in the Action or in any proceeding in any other court or forum, regardless of legal theory or the law under which such action may be brought, and regardless of the type or amount of relief or damages claimed, against any of the Released Persons relating to the labeling, advertising and marketing of the Product and allegations that the Product caused fading or that otherwise relates in any way to Reckitt's claims that Woolite laundry detergent renews or revives color in clothing, brings the color back to clothing, used a Color Renew logo, and/or referred to 'Color Renew.' However, this release does not include claims for personal injuries or damage to property other than clothing." Settlement, Section II.R.

authority for the reasonableness of the requested payment. While Plaintiffs will provide more detail with their formal fee motion, per the Northern District's guidelines Plaintiffs also provide the following lodestar information now: Over the past three years, Plaintiffs' counsel have devoted about 3,888 hours to this case; they have not been compensated for any of that time or effort to date; and their lodestar using their typical hourly billing rates totals $2,408,500.00. Kafka Decl. ¶ 18. Class Counsel anticipate their lodestar will increase over the coming months, as they prepare a final approval motion, a formal application for their fees and costs, and as they work with the settlement administrator, Reckitt, and class members to implement the settlement.

Plaintiffs also intend to ask the Court to award the class representatives service awards of $10,000 each to recognize the time, effort, and expense they incurred pursuing claims against Reckitt, which benefitted the entire class. While Plaintiffs will provide more detail with their formal fee motion, Plaintiffs note that the six class representatives all devoted substantial time and resources to prosecuting the case for the class's benefit. The class representatives all responded to discovery requests, sat for lengthy depositions, and participated in the mediation process. Kafka Decl. ¶ 20.

## THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AND DIRECT NOTICE TO THE SETTLEMENT CLASS

Pursuant to Rule 23, "The court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Below, Plaintiffs detail why this motion should be granted and notice should be sent to the settlement class. In short, the settlement is poised to provide a strong monetary recovery to the class, making the settlement fair, reasonable, and adequate, and thus worthy of the Court's approval. And certification of the class for settlement purposes is appropriate under both Rule 23(a) and Rule 23(b)(3).

# I. THE PROPOSED SETTLEMENT MERITS APPROVAL

Rule 23 provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e)(2).

Below, Plaintiffs analyze each of the Rule 23(e)(2) factors in turn, and do so bearing in mind the Ninth Circuit's recent admonition that the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018); *accord* Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018) ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate."). As will be discussed, the settlement is fair, and the Rule 23(e)(2) factors weigh in favor of approving it.

## A. Plaintiffs and their counsel have adequately represented the class.

Under Rule 23(e)(2)(A), the first factor to be considered is the adequacy of representation by the class representatives and attorneys. As an initial matter, in its order granting class certification, the Court already found that the class representatives and class counsel were adequate. ECF No. 143 at 14:24-15:5. The Court appointed the six named Plaintiffs as class representatives and appointed Eric Kafka of Cohen Milstein Sellers & Toll PLLC as class counsel. ECF No. 143 at 23.

The class representatives continue to be adequate representatives because they have diligently represented the class. The class representatives all responded to discovery requests, sat for lengthy depositions, and participated in the mediation process. Kafka Decl. ¶ 20. Throughout this case, they have remained in contact with Plaintiffs' counsel, stayed apprised of the litigation, and have acted with the interests of the class in mind.

Plaintiffs' counsel has also continued to adequately represent the class. Plaintiffs' counsel vigorously prosecuted this case, briefing successful motions to defeat Reckitt's motion to dismiss and to certify a litigation class. Kafka Decl. ¶ 4. Plaintiffs' counsel also briefed Reckitt's motion for summary judgment (which the Court never ruled upon). *Id.* ¶ 10. Plaintiffs' counsel completed fact and expert discovery, conducting 20 depositions, reviewing more than 18,000 pages of

documents, and submitting three expert reports. *Id*. ¶ 4. As part of these efforts, Class Counsel have advanced approximately $350,000.00 in litigation expenses on behalf of the class, with no assurance that those expenses would be reimbursed. *Id*. ¶ 19.

Finally, Class Counsel have successfully litigated many prior class actions involving consumer protection claims, successfully resolving many of those in this district, and have brought that experience and knowledge to bear on behalf of the class. Kafka Decl. ¶ 2.

**B.    The parties negotiated the proposed settlement at arm's length.**

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) advisory committee's note (2018).

 There are multiple indicia here of the arm's length nature of the negotiations. First, the parties did not settle the case until they had completed fact and expert discovery, the Court had denied Reckitt's motion to dismiss and certified a class, and the parties were less than 5 months from trial. This is indicia of arm's length negotiations. *See Wannemacher v. Carrington Mortg. Servs., LLC*, No. 12-cv-2016, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant … discovery [was] conducted"; "plaintiffs had already drafted a class certification brief"; and before "exploring settlement, the parties litigated the case for a year").

Second, the Settlement provides for a non-reversionary fund where unclaimed portions will never go back to Reckitt. The Ninth Circuit has warned that a "reversion clause can be a tipoff that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 612 (9th Cir. 2018) (internal citations omitted). Here, the Court can be particularly confident of the arm's length nature of the parties' settlement negotiations because the parties agreed to a non-reversionary fund.

### C.    The quality of relief to the class weighs in favor of approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) and (D) advisory committee's note (2018); *In re Volkswagen*, 895 F.3d at 611 (the "factors and warning signs" identified in *Bluetooth* "are just guideposts"; the focus is fairness).

#### 1.    The settlement provides strong relief for the class.

The relief to be provided to the settlement class is exceptionally strong. The $3,275,000 settlement fund is a considerable amount given that Plaintiffs' expert estimated that price premium damages for all three classes would total $3.7 million. Kafka Decl. ¶¶ 6,14.

Plaintiffs have no reservation in recommending that the Court approve this settlement on behalf of the class. In other class cases, courts have recognized that a recovery of 20-40% of what could be potentially recovered at trial easily justifies compromising the class's claims through settlement rather than bearing additional risk and delay through continued litigation. *See, e.g.*, *Messineo v. Ocwen Loan Servicing, LLC*, No. 15-CV-02076-BLF, 2017 WL 733219, at *5 (N.D. Cal. Feb. 24, 2017) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial," and noting that this District has approved settlements valued at 14% and 13.6% of the maximum recovery); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (upholding class settlement valued at 10 to 30% of total damages); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019) (granting preliminary approval of settlement that, with 100% claims rate, would deliver 33% of primary damages estimate); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *2 (N.D.

Cal. Nov. 21, 2016) (granting final approval of "Settlement Amount [that] represents 15 percent of Plaintiffs' likely recovery at trial if they were to prevail").

### 2.    Continued litigation would entail substantial cost, risk, and delay.

Almost all class actions involve high levels of cost, risk, and lengthy duration, which supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (internal citations omitted). Here, had the parties not settled, the litigation would have been risky, protracted, and costly.

While Plaintiffs believe that they have a strong case, they faced many risks. First, Reckitt's summary judgment motion was still pending before the Court. ECF No. 156. If Reckitt's summary judgment motion were granted, it would have resolved the entire case in Reckitt's favor, leaving the class with no relief.

Second, trial is always risky. Here, Plaintiffs' success at trial depended on Plaintiffs convincing the finder of fact (the jury) to side with Plaintiffs on multiple contentious factual disputes. Plaintiffs would have to had persuaded the jury that: (a) Woolite's color renew/revive representation is false or misleading, (b) that the color renew/revive claim is material to a reasonable consumer, and (c) that the color renew/revive representation caused class members to suffer damages. Reckitt had also submitted reports from five experts who supported Reckitt's positions on these factual disputes. Kafka Decl. ¶ 5. While Plaintiffs' experts conducted rigorous analyses, Plaintiffs' expert opinions would have all been attacked at trial by Reckitt's experts. For example, Reckitt's experts criticized (a) the methodology used by Plaintiffs' expert chemist to test whether Woolite renews or revives colors in clothing, (b) the studies that Plaintiffs' marketing expert relied upon to opine that the color renew/revive claim is material, and (c) the methodology that Plaintiffs' damages expert used to calculate damages. *Id*. ¶ 7.

Of course, even if Plaintiffs prevailed on each of these issues through trial, an appeal would likely follow, taking another two-plus years to resolve. At best, a class recovery would come by perhaps 2025 or 2026. So, while there were reasonable prospects for a somewhat greater recovery

following a trial and appeals, that victory would have entailed substantial risk, cost, and delay. All of these considerations favor settlement; the class will receive meaningful relief now—not years down the road, assuming they prevailed at all.

### 3. The proposed award of attorneys' fees also support approval.

Nothing about the proposed award of attorneys' fees should detract from the fairness of the settlement. As noted above, Plaintiffs are seeking compensation for their counsel from the settlement fund, which necessarily entails a fee award that is proportional to the class's recovery. Furthermore, counsel will have a "negative" multiplier, being compensated for only 41% of their lodestar in this action. Plaintiffs' fee request is modest given the strong recovery for the class and the amount of work done by Plaintiffs' counsel. *See Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) ("Multipliers can range from 2 to 4 or even higher."); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving 6.85 multiplier and stating that "still falls well within the range of multipliers that courts have allowed"). The proposed award is thus appropriate, which Plaintiffs will detail further when they file their Rule 23(h) motion for attorneys' fees.

### 4. The parties have no other agreements pertaining to the settlement.

Courts also must evaluate any agreement made in connection with the proposed settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the settlement agreement before the Court is the only extant agreement. Kafka Decl. ¶ 13.

### D. The settlement treats all settlement class members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note (2018).

Here, the settlement treats all class members the same, paying all class members on a *pro rata* basis based on the number of eligible Woolite laundry detergent bottles they purchased *See, e.g.*, *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

Finally, though the class representatives will receive additional money in the form of service awards, the extra payments are in recognition for the service they performed on behalf of the class, and the Ninth Circuit has approved such awards. *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments to named plaintiffs have become 'fairly typical' in class actions."); *see also Boyd v. Bank of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)). The proposed awards here are commensurate with work conducted by the named Plaintiffs in this case. Kafka Decl. ¶ 20.

                                          ****

For all these reasons, the proposed settlement merits approval.

### THE SETTLEMENT PROVIDES THE BEST NOTICE PRACTICABLE

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Rule 23 was amended in 2018 "to recognize contemporary methods of giving notice to class members," doing away with the interpretation that the Rule required notice "by first class

mail." Fed. R. Civ. P. 23(c)(2) advisory committee's note (2018). The rule recognized that "electronic methods of notice" are permissible. *Id*.

Here, Epiq will use a digital/internet notice program. Azari Decl. ¶ 18. The proposed notice plan will reach at least 70% of the Settlement Class. *Id*. That reach will be further enhanced by internet sponsored search listings, an informational release, a Settlement Website, and newspaper notice, which are not included in the reach calculation. *Id*. Epiq designed the notice plan to reach the greatest practicable number of members of the Settlement Class. *Id*. Because there is no customer contact information for purchasers of Woolite laundry detergent, direct notice cannot be provided to the class. Based on Epiq's experience, the notice plan is the best notice practicable under the circumstances of this case. *Id*. Plaintiffs thus request that the Court approve this notice plan as the best practicable under the circumstances.

Based on Epiq's experience handling similar consumer class action settlements, Epiq estimates that approximately 100,000 valid claims will be filed by Settlement Class Members. Azari Decl. ¶ 43. For this estimate, Epiq relied on three comparable settlements: (1) *Luib v. Henkel Consumer Goods Inc.* (Purex), 1:17-cv-03021 (E.D.N.Y.) (final approval granted Aug. 19, 2019); (2) *Kukorinis v. Walmart, Inc.*, 1:19-cv-20592 (S.D. Fla.) (final approval granted Sept. 20, 2021); and *Cowen v. Lenny & Larry's Inc.*, 1:17-cv-01530 (N.D. Ill.) (final approval granted May 2, 2019). *See* Azari Decl. ¶¶ 44-46. These cases were selected by Epiq as comparable because they involved consumer packaged goods, provided a cash remedy, and had the same form of notice – media notice plans that reached an equivalent percentage of class members as the proposed media notice plan for this litigation. *Id.*

The notices also comply with Rule 23(c)(2)(B) in that they "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *See* Kafka Decl., Exs. 1-C & 1-D.) The notice is also consistent with the sample provided by the Federal Judicial Center.

Notice of the proposed settlement will also be provided to the U.S. Attorney General and appropriate regulatory officials in all 50 states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Kafka Decl., Ex. 1, Sec. VI. Reckitt, through the settlement administrator, will provide these government officials with copies of all required materials so that the states and federal government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to final approval.

## THE COURT SHOULD SET A SCHEDULE FOR FINAL APPROVAL

Once the Court directs notice of the settlement to the class, the next steps in the settlement approval process are to schedule a final approval hearing, allow time for notice to be sent to the class, and provide an opportunity for class members to submit objections and opt-out requests.

Plaintiffs propose the following schedule:

| | |
|---|---|
| **Deadline for commencement of notice plan** | 21 days after entry of order |
| **Deadline for class members to opt out or object to the settlement** | 96 days after entry of order |
| **Deadline for Plaintiffs to file motion(s) for final approval and award of attorneys' fees** | 96 days after entry of order |
| **Deadline to file brief with any additional information in support of final approval and attorneys' fee application** | 117 days after entry of order |
| **Final Approval Hearing** | 131 days after entry of order |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order directing notice of the proposed settlement to the class, appointing Class Counsel, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

DATED: June 8, 2023                          Respectfully submitted,


                                             By: /s/ *Eric Kafka*
                                             _____

                                             Eric Kafka *(*admitted *pro hac vice*)
                                             **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                             88 Pine Street, 14th Floor,
                                             New York, NY 10005
                                             Telephone: (212) 838-7797
                                             Facsimile: (212) 838-7745
                                             ekafka@cohenmilstein.com

                                             Victoria Nugent (admitted *pro hac vice*)
                                             Geoffrey Graber (SBN 211547)
                                             Brian Johnson (admitted *pro hac vice*)
                                             **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                             1100 New York Ave. NW, Fifth Floor
                                             Washington, DC 20005
                                             Telephone: (202) 408-4600
                                             Facsimile: (202) 408-4699
                                             vnugent@cohenmilstein.com
                                             ggraber@cohenmilstein.com
                                             bejohnson@cohenmilstein.com

                                             Theodore J. Leopold *(*admitted *pro hac vice*)
                                             **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                             11780 U.S. Highway One
                                             Suite N500
                                             Palm Beach Gardens, FL 33408
                                             Telephone: (561) 515-1400
                                             Facsimile: (561) 515-1401
                                             tleopold@cohenmilstein.com

                                             ***Counsel for Plaintiffs and Classes***

MOTION FOR PRELIMINARY APPROVAL AND NOTICE OF SETTLEMENT
Case No. 5:20-cv-02101-BLF