ERIC KAFKA (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

THEODORE LEOPOLD (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
tleopold@cohenmilstein.com

GEOFFREY GRABER (SBN 211547)
BRIAN JOHNSON (*pro hac vice*)
**COHEN MILSTEIN**
**SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
bejohnson@cohenmilstein.com

*Counsel for Plaintiffs and Classes*

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| STEVEN ROBERT PRESCOTT, DONOVAN MARSHALL, MARIA CHRISTINE ANELLO, DARLENE KITTREDGE, TREAHANNA CLEMMONS, and SUSAN ELIZABETH GRACIALE, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> RECKITT BENCKISER LLC, <br><br> Defendant. | Case No.: 5:20-cv-02101-BLF <br><br> **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS** <br><br> Date: March 28, 2024 <br> Time: 9:00 AM <br> Judge: Hon. Beth L. Freeman |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on March 28, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard, Plaintiffs will appear through counsel before the Honorable Beth Labson Freeman, Courtroom 3, 5th Floor of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113.

Plaintiffs do hereby move the Court for an order certifying the settlement class, granting final approval of the proposed class action settlement, authorizing the settlement administrator to administer the settlement benefits to members of the class, and awarding attorneys' fees in the amount of $982,500.00, reimbursement of $369,499.27 in litigation costs, and service awards totaling $60,000.00 to the six named Plaintiffs ($10,000.00 for each named Plaintiff).

This motion is based on the notice of motion and motion for final approval of class settlement and for an award of attorneys' fees, costs, and service awards, the following memorandum of points and authorities, the attached declarations and exhibits, and any other matters in the record or that properly come before the Court.

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 1

**FACTUAL BACKGROUND** .......................................................................................... 2

I.    HISTORY OF THE LITIGATION ............................................................. 2

II.    NOTICE PLAN AND REACTION OF THE CLASS ................................ 4

III.   OVERVIEW OF THE SETTLEMENT .................................................. 5

    A.    The Proposed Settlement Classes ............................................. 5

    B.    Benefits to the Settlement Classes ........................................... 6

    C.    The Scope of Class Members' Release of Claims .................... 6

IV.   ATTORNEYS' FEES, COST REIMBURSEMENTS, AND SERVICE AWARDS ........ 7

**ARGUMENT** ................................................................................................................... 7

I.    THE COURT SHOULD GRANT FINAL SETTLEMENT APPROVAL ....................... 7

    A.    Plaintiffs and their Counsel have Adequately Represented the Classes. ............... 8

    B.    The Parties Negotiated the Proposed Settlement at Arm's Length ...................... 8

    C.    The Quality of Relief to the Classes Weighs in Favor of Approval. ..................... 9

        i.    The Settlement Provides Strong Relief for the Classes. ........................... 10

        ii.    Continued Litigation Would Entail Substantial Cost, Risk, and Delay. ........ 11

        iii.   The Settlement Provides for an Effective Distribution of Proceeds to the Classes. ........ 12

        iv.   The Proposed Award of Attorneys' Fees Also Supports Approval. ........ 12

        v.    The Parties Have No Other Agreements Pertaining to the Settlement. ........ 12

    D.    The Settlement Treats Class Members Equitably Relative to Each Other. .......... 12

    E.    The Classes Received Best Notice Practicable. ...................................... 13

    F.    Reaction of the Classes Also Supports Approval of the Settlement. ................... 14

II.    CERTIFICATION OF THE SETTLEMENT CLASSES IS WARRANTED ................. 14

III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE GRANTED ........ 15

    A.    Fee Request is Supported by Strong Result Achieved for the Classes. ................ 16

ii

PLAINTIFFS' MOTION FOR FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 5:20-cv-02101-BLF

B.  Class Counsel Overcame Significant Risk to Deliver a Strong Result for the Classes. ........................................................................................ 17

C.  Class Counsel's Skill in Litigating on Behalf of the Classes Further Supports the Requested Fee Award. ............................................................ 18

D.  Class Counsel Undertook the Litigation an a Purely Contingent Basis. ............... 18

E.  Attorneys' Fee Awards of 30% to 50% of the Fund are Frequently Awarded for Common Funds of $10 Million or Less. ............................................ 18

F.  Reaction of Classes to the Settlement Supports Counsel's Requested Fee. ......... 19

G.  A Lodestar Cross-Check Confirms the Reasonableness of Counsel's Requested Fee. .................................................................................... 19

    i.  Class Counsel Reasonably Devoted Over Four Thousand Hours to Prosecuting This Litigation Over the Past Three Years. ........................... 20

    ii.  Class Counsel's Rates Fall Within the Range Prevailing in the Community and Have Been Approved By Courts. .................................... 21

    iii.  Class Counsel's Negative Multiplier is Another Factor Supporting Approval of the Fee Request. ....................................................... 22

IV.  CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF COSTS IS REASONABLE AND SHOULD BE GRANTED ........................................................... 23

V.  REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS OF $10,000 ARE APPROPRIATE AND SHOULD BE GRANTED .................................................. 23

VI.  COURT SHOULD APPROVE THE WORLD WILDLIFE FUND AS THE *CY PRES* RECIPIENT ........................................................................................ 25

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
  2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) (Freeman, J.) ............................................ *passim*

*Altamirano v. Shaw Indus., Inc.*,
  2015 WL 4512372 (N.D. Cal. July 24, 2015)........................................................................13

*Alvarez v. Farmers Ins. Exch.*,
  2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ......................................................................19

*In re Anthem Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018)...........................................................................................9

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ....................................................................21

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .........................................................................9, 15, 19, 20

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ...............................................................................................21

*In re Capacitors Antitrust Litig.*,
  No. 14-cv-03264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)........................................23

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2019 WL 536661 (N.D. Cal. Feb. 11, 2019) .......................................................................10

*Cicero v. DirecTV, Inc.*,
  2010 WL 2991486 (C.D. Cal. Jul.27, 2010) .......................................................................19

*Cosby v. KPMG LLP*,
  2022 WL 4129703 (E.D. Tenn. July 12, 2022) ...................................................................22

*Graham v. DaimlerChrysler Corp.*,
  34 Cal. 4th 553 (Cal. 2004)...............................................................................................18

*Harris v. Vector Mktg. Corp.*,
  2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .......................................................................13

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ...................................................................10

iv

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ...................................................................................... 6

*Kulik v. NMCI Med. Clinic Inc.*,
    2023 WL 2503539 (N.D. Cal. Mar. 13, 2023) (Freeman, J.) ......................... 14, 24

*In re Lenovo Adware Litig.*,
    2019 WL 1791420 ................................................................................................. 23

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .............................................................................. 11

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ........................................................ 17

*Messineo v. Ocwen Loan Servicing, LLC*,
    2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ........................................................ 10

*In re Nexus 6P Prods. Liab. Litig.*,
    2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) (Freeman, J.) ...................... 16, 17, 22

*Nitsch v. DreamWorks Animation SKG, Inc.*,
    No. 14-cv-04062, 2017 WL 2423161 (N.D. Cal. June 5, 2017) ............................ 22

*PLCM Grp. v. Drexler*,
    22 Cal. 4th 1084 (2000) ....................................................................................... 21

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017), aff'd, 896 F.3d 900 (8th Cir. 2018) ............... 14

*Quiruz v. Specialty Commodities, Inc.*,
    2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) (Freeman, J.) ............................. 18, 24

*Rivas v. BG Retail, LLC*,
    2020 WL 264401 (N.D. Cal. Jan. 16, 2020) (Freeman, J.) .......................... *passim*

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................................... 10, 24

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
    2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ................................................. 12, 22

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) .................................................................... 12, 22

*Taylor v. Shippers Transp. Express, Inc.*,
    2015 WL 12658458 (C.D. Cal. May 14, 2015) .................................................... 24

PLAINTIFFS' MOTION FOR FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 5:20-cv-02101-BLF

*Thieriot v. Celtic Ins. Co.*,
  2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ................................................................17, 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) ................................................................9

*Wannemacher v. Carrington Mortg. Servs.*,
  2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ................................................................9

*Weiner v. Tivity Health, Inc.*,
  No. 17-cv-1469, ECF No. 177 (M.D. Tenn. Oct. 7, 2021) ................................................................22

*In re Wells Fargo & Co. Sec. Litig.*,
  Case No. 1:20-cv-04494-JLR-SN (S.D.N.Y. Sept. 8, 2023) ................................................................22

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) (Freeman, J.) ................................................................22

*In re Zoom Video Commc'ns, Inc. Privacy Litig.*,
  2022 WL 1593389 (N.D. Cal. April 21, 2022) ................................................................14

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................*passim*

William B. Rubenstein, *5 Newberg on Class Actions* (5th ed. 2020) ................................................................23

vi

# INTRODUCTION

The parties first presented this proposed settlement to the Court in September 2023. At the time, Plaintiffs asked the Court to grant preliminary settlement approval by finding that it would likely be able to (i) approve the settlement, and (ii) certify a settlement class. The Court made those findings and directed notice to the settlement class. With that notice having been delivered, Plaintiffs now formally request that the Court grant final approval of their settlement and Class Counsel request reimbursement of their litigation expenses, attorneys' fees, and service awards to the class representatives.

The settlement will fully resolve litigation that stems from Defendant Reckitt Benckiser LLC's ("Reckitt") sale of Woolite Gentle Cycle and Darks laundry detergent with labels bearing the phrases "Color Renew" and/or "revives colors." To end the litigation, Reckitt will pay $3.275 million to create a *non-reversionary* cash fund. This is an exceptionally strong result for the class given that Plaintiffs' expert estimated that price premium damages for all three classes would total $3.7 million. Furthermore, the reaction of the class to the settlement has been overwhelmingly positive: no class members objected or requested to be excluded from the settlement and there is an 8.6% claims rate.

Class Counsel also request to be compensated for its effort in achieving this result for the class. Plaintiffs litigated this case for more than three years, devoting over 4,000 hours to prosecuting the case, while advancing almost $370,000 in out-of-pocket litigation costs. Class Counsel request reimbursement of their out-of-pocket expenses as well as an award of attorneys' fees of $982,500.00 (30% of the settlement fund). If granted, Class Counsel will receive a "negative" multiplier of 39% of its incurred lodestar. Given the strong result delivered to the class and Class Counsel's negative multiplier, Class Counsel believe the requested fee fairly compensates them for their efforts and should therefore be approved. In support of its application, Class Counsel provide a declaration detailing the work Class Counsel performed over the course of the litigation.

## **FACTUAL BACKGROUND**

### I.    HISTORY OF THE LITIGATION

This case arises from Plaintiffs' and Class Members' purchase of Woolite Gentle Cycle or Darks laundry detergent with labels bearing the phrases "Color Renew" and/or "revives colors." Plaintiffs allege that Reckitt's color revival representation is false and deceptive because Woolite laundry detergent does not renew or revive color in clothing. *See e.g.,* ECF No. 110-2 at 7:1-20. Plaintiffs allege that Reckitt's color revival representation caused Plaintiffs and Class Members to pay a price premium for Woolite laundry detergent. *See e.g.,* ECF No. 91 ¶ 5.

Since inception, this case has been fiercely contested. The parties submitted briefing on Reckitt's motion to dismiss, completed extensive fact discovery, submitted briefing on class certification, completed extensive expert discovery (where eight experts submitted reports and were deposed), and submitted briefing on summary judgment. When the parties agreed to settle the case on March 15, 2023, the case was less than five months away from its August 7, 2023 trial date.

This action was initiated by Plaintiff Steven Prescott on March 26, 2020. ECF No. 1. On May 26, 2020, Defendant filed a motion to dismiss Plaintiff Prescott's amended complaint. ECF No. 26. On December 3, 2020, the Court granted, in part, and denied, in part, Defendant's motion to dismiss. ECF No. 70. The Court permitted Prescott to proceed with his claims for (1) violation of California's Unfair Competition Law ("UCL"), (2) violation of California's Consumer Legal Remedies Act ("CLRA"), and (3) California Quasi-Contract Claim for Restitution.

In March 2021, Plaintiffs filed a Second Amended Complaint, adding seven additional named plaintiffs and two new states. ECF No. 91. After two of the plaintiffs voluntarily dismissed their claims, the case proceeded with six Class Representatives (Steven Prescott, Donovan Marshall, Christine Anello, Darlene Kittredge, Treahanna Clemmons, and Susan Graciale) on behalf of three proposed state classes: California, New York, and Massachusetts.

The parties engaged in, and completed, fulsome fact discovery. To prepare class members' claims for certification and trial, Plaintiffs' counsel reviewed more than 18,000 pages of Reckitt's

documents, deposed four Reckitt employees, served three sets of interrogatories, and obtained documents through two third-party subpoenas. Declaration of Eric Kafka ("Kafka Decl.") ¶ 12. The Class Representatives all sat for lengthy depositions and responded to Reckitt's requests for production. *Id.* ¶¶ 27-73. During discovery, the parties engaged in many meet-and-confer discussions. *Id.* ¶ 12. Through those efforts, they were able to resolve a great number of issues, but ultimately briefed five discovery disputes before Magistrate Judge Virginia K. DeMarchi. ECF Nos. 54, 55, 72, 101, and 102.

The parties also completed extensive expert discovery. Plaintiffs submitted reports from three experts: a chemist, an economist, and a marketing expert. Kafka Decl. ¶¶ 12, 20. Plaintiffs relied on this expert evidence in support of class certification and in opposition to summary judgment. In response, Reckitt submitted expert reports from two chemists, an economist, and two marketing experts. *Id.* The parties deposed all eight experts, and Plaintiffs' expert economist was deposed twice. *Id.*

In November 2021, Plaintiffs moved for class certification on behalf of three statewide classes for California, New York, and Massachusetts. ECF No. 111. In moving for certification Plaintiffs marshalled the evidence from the extensive factual record, submitting more than 40 exhibits to the Court. After holding a hearing in July 2022, the Court certified Plaintiffs' three proposed classes. ECF No. 143 at 22-23. The Court appointed Steven Prescott, Donovan Marshall, Treahanna Clemmons, Maria Christine Anello, Darlene Kittredge, and Susan Graciale as class representatives. *Id.* at 23. The Court also appointed Eric Kafka of Cohen Milstein Sellers & Toll as class counsel for the Classes. *Id.*

On January 13, 2023, Defendant filed a motion for summary judgment and to exclude the opinions of Plaintiffs' marketing expert. ECF No. 156. In February 2023, the parties completed briefing on Defendant's summary judgment motion.

In February and March 2023, as they were preparing for the hearing on Defendant's motion for summary judgement, the parties engaged in intensified settlement discussions. Kafka Decl. ¶¶ 12, 20. The parties' efforts built off their prior mediation sessions in July 2021 and March 2022

with the Honorable Laurel Beeler. *Id*. On March 15, 2023, the parties reached an agreement in principle to the material terms of a classwide settlement that fully resolves this litigation. ECF No. 170.

The parties then prepared a formal settlement agreement, which involved efforts to finalize the terms of the agreement, develop a notice and distribution plan, and prepare and finalize the agreement's exhibits and this motion. Plaintiffs also retained the services of an experienced settlement administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") after soliciting competing bids from three potential administrators. Kafka Decl. ¶ 12. With the help of Epiq, the Plaintiffs developed a notice and funds-distribution plan, which is incorporated into the settlement agreement and detailed below.

In June 2023, Plaintiffs filed a motion requesting the Court preliminarily approve the settlement and direct notice of the settlement to the classes. ECF No. 178. On September 14, 2023, the Court held a hearing on Plaintiffs' motion for preliminary approval. At the hearing, the Court directed the parties to propose a *cy pres* recipient with Plaintiffs' final approval motion. 9/14/23 Hr'g Tr. at 6:14-24. The Court granted Plaintiffs' motion for preliminary approval and directed Epiq to commence disseminating notice to the class by October 5, 2023. ECF No. 185.

## II.    NOTICE PLAN AND REACTION OF THE CLASS

On October 5, 2023, Epiq commenced disseminating notice to the Class. Declaration of Cameron Azari ("Azari Decl.") ¶ 16. Epiq has completed disseminating notice. Azari Decl. ¶ 27. Using a digital/internet notice plan, Epiq reached approximately 71% of the Settlement Class. *Id*. ¶ 8. That reach was further enhanced by internet sponsored search listings, an informational release, a Settlement Website, and newspaper notice, which are not included in the reach calculation. *Id*. As part of its claims administration duties, Epiq also identified and removed fraudulent claims. Declaration of Julie Redell ("Redell Decl.") ¶¶ 6-7. For example, Epiq received dozens, hundreds, or sometimes thousands of claim forms from the same internet location, email address, and/or mailing address. *Id.* ¶ 7.

The response from the Settlement Class to the Settlement has been excellent. Reckitt sold approximately ███████ Woolite bottles to Class Members. Kafka Decl. ¶ 74. 129,003 Class Members have submitted valid claims for 324,927 bottles of Woolite. Redell Decl. ¶ 8. This represents approximately 8.6% of the Woolite bottles sold to Class Members. Kafka Decl. ¶ 76. Based on the claims rate, class members are projected to receive $4.78 per Woolite bottle validly claimed (in the first distribution). *Id.* ¶ 77.[1] Notably, no Class Members have requested to be excluded from the Settlement, and no Class Members have objected to the Settlement. Azari Decl. ¶ 26.

By February 16, Epiq will inform the Court of the amount they request in payment from the settlement fund for their services.

## III.    OVERVIEW OF THE SETTLEMENT

### A.    The Proposed Settlement Classes

The settlement contemplates certification of the following settlement classes:

(a) California Class: "All residents of California who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 1, 2017 to May 1, 2023."

(b) New York Class: "All residents of New York who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 22, 2018 to May 1, 2023."

(c) Massachusetts Class: "All residents of Massachusetts who purchased Woolite laundry detergent with a label bearing the phrases "Color Renew" and/or "revives colors" from February 22, 2017 to May 1, 2023."[2]

---

[1] The per-bottle payment may be revised in the coming weeks. Kafka Decl. ¶ 77. On February 16, Plaintiffs will inform the Court of the amount that class members will receive per Woolite bottle validly claimed in the first distribution. *Id.*

[2] Excluded from the Settlement Class are: (a) Reckitt, any entity in which Reckitt has a controlling interest, Reckitt's officers, directors, legal representatives, successors, subsidiaries and assigns; (b) any judge, justice or judicial officer presiding over this action or settlement

Kafka Decl., Ex. 2 ("Settlement Agreement"), Section II.V.

### B.   Benefits to the Settlement Classes

The parties' proposed settlement will deliver a settlement fund in the amount of $3,275,000.00. *Id.,* Section IV.A. The settlement fund is **non-reversionary**. *Id.*, Section IV. Thus, any residual or unclaimed money in the settlement fund will *not* be returned to Reckitt. *Id.*, Section IX.L. To distribute that fund among the members of the class, the parties have devised a plan of allocation that will pay class members on a *pro rata* basis based on the number of eligible Woolite laundry detergent bottles they purchased. *Id.*, Section IX.J. The settlement fund will also cover all costs associated with the settlement administration and class notice, attorneys' fees and litigation-cost reimbursements, and plaintiff service awards. *Id.*, Section IV.A.1.

### C.   The Scope of Class Members' Release of Claims

In exchange for the benefits provided under the settlement, the Plaintiffs and settlement class members will provide a release of claims against Reckitt and its parents, subsidiaries, predecessors, successors, suppliers, retailers, and customers. Settlement, Section II.S.

The release is limited to claims "relating to the labeling, advertising and marketing of the Product and allegations that the Product caused fading or that otherwise relates in any way to Reckitt's claims that Woolite laundry detergent renews or revives color in clothing, brings the color back to clothing, used a Color Renew logo, and/or referred to 'Color Renew.'" Settlement Agreement, Section II.R.

The parties do not seek to release any claims other than those that were (or could have been) pleaded based on the facts alleged by Plaintiffs during the litigation. Such a release is appropriate, and typical. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

---

conferences and the members of their immediate families and staff; (c) any person who timely and properly excludes himself or herself from the Settlement Class in accordance with Section VII(B) of this Agreement or as approved by the Court. Settlement, Section II.V.

PLAINTIFFS' MOTION FOR FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 5:20-cv-02101-BLF

## IV.    ATTORNEYS' FEES, COST REIMBURSEMENTS, AND SERVICE AWARDS

Class Counsel have litigated the case for over three years and have advanced hundreds of thousands of dollars in litigation expenses, but have yet to be compensated for their efforts. As detailed below, Class Counsel request an attorneys' fees award of $ 982,500.00 (which is 30% of the fund), reimbursement of $ 369,499.27 in litigation costs, and service awards totaling $60,000.00 to the six named Plaintiffs ($10,000.00 for each named Plaintiff).

## ARGUMENT

## I.    THE COURT SHOULD GRANT FINAL SETTLEMENT APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of a class action. *See* Fed. R. Civ. P. 23(e). A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2), as amended on December 1, 2018, enumerates the factors that the Court should consider when determining whether a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Rule requires the Court to assess whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Additionally, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Rivas v. BG Retail, LLC*, 2020 WL 264401, at *4 (N.D. Cal. Jan. 16, 2020) (Freeman, J.) (internal citations omitted) As discussed below, the settlement is fair, reasonable, and adequate, and the Rule 23(e)(2) factors weigh in favor of approving it.

**A.      Plaintiffs and their Counsel have Adequately Represented the Classes.**

Under Rule 23(e)(2)(A), the first factor to be considered is the adequacy of representation by the class representatives and attorneys. As an initial matter, in its order granting class certification, the Court already found that the class representatives and class counsel were adequate. ECF No. 143 at 14:24-15:5. The Court appointed the six named Plaintiffs as class representatives and appointed Eric Kafka of Cohen Milstein Sellers & Toll PLLC as class counsel. ECF No. 143 at 23.

The class representatives continue to be adequate representatives because they have diligently represented the class. The class representatives all responded to discovery requests, produced documents, sat for lengthy depositions, and participated in the mediation process. Kafka Decl. ¶¶ 27-73. Throughout this case, they have remained in contact with Plaintiffs' counsel, stayed apprised of the litigation, and have acted with the interests of the class in mind. *Id.*

Plaintiffs' counsel has also continued to adequately represent the class. Plaintiffs' counsel vigorously prosecuted this case, briefing successful motions to defeat Reckitt's motion to dismiss and to certify a litigation class. *Id.* ¶ 12. Plaintiffs' counsel also briefed Reckitt's motion for summary judgment (which the Court never ruled upon). *Id*. Plaintiffs' counsel completed fact and expert discovery, conducting 20 depositions, reviewing more than 18,000 pages of documents, and submitting three expert reports. *Id*. As part of these efforts, Class Counsel have advanced $ 369,499.27 in litigation expenses on behalf of the class, with no assurance that those expenses would be reimbursed. *Id.* ¶ 21.

Finally, Class Counsel have successfully litigated many prior class actions involving consumer protection claims, successfully resolving many of those in this district, and have brought that experience and knowledge to bear on behalf of the class. *Id.* ¶ 14.

**B.      The Parties Negotiated the Proposed Settlement at Arm's Length.**

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the

negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) advisory committee's note (2018).

There are multiple indicia here of the arm's length nature of the negotiations. First, the parties did not settle the case until they had completed fact and expert discovery, the Court had denied Reckitt's motion to dismiss and certified a class, and the parties were less than five months from trial. This is indicia of arm's length negotiations. *See In re Anthem Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) (finding no signs of collusion where parties reached a settlement "after all briefing on class certification and *Daubert* motions was complete" and the "parties had already completed class-certification discovery, fact discovery, and expert discovery"); *see also Wannemacher v. Carrington Mortg. Servs.*, 2014 WL 12586117, at *8 (C.D. Cal. Dec. 22, 2014) (finding no signs of collusion where "significant … discovery [was] conducted"; "plaintiffs had already drafted a class certification brief"; and before "exploring settlement, the parties litigated the case for a year").

Second, the Settlement provides for a non-reversionary fund where unclaimed portions will never go back to Reckitt. The Ninth Circuit has warned that a "reversion clause can be a tipoff that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) (internal citations omitted). Here, the Court can be particularly confident of the arm's length nature of the parties' settlement negotiations because the parties agreed to a non-reversionary fund.

### C.    The Quality of Relief to the Classes Weighs in Favor of Approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P.

23(e)(2)(C) and (D) advisory committee's note (2018); *In re Volkswagen*, 895 F.3d at 611 (the "factors and warning signs" identified in *Bluetooth* "are just guideposts"; the focus is fairness).

### i.    The Settlement Provides Strong Relief for the Classes.

The relief to be provided to the settlement class is exceptionally strong. The $3,275,000 settlement fund is a considerable amount given that Plaintiffs' expert estimated that price premium damages for all three classes would total $3.7 million. Kafka Decl. ¶ 9.

Plaintiffs have no reservation in recommending that the Court approve this Settlement on behalf of the class. In other class cases, courts have recognized that a recovery of 20-40% of what could be potentially recovered at trial easily justifies compromising the class's claims through settlement rather than bearing additional risk and delay through continued litigation. *See, e.g.*, *Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, at *5 (N.D. Cal. Feb. 24, 2017) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial," and noting that this District has approved settlements valued at 14% and 13.6% of the maximum recovery); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (upholding class settlement valued at 10 to 30% of total damages); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *2 (N.D. Cal. Nov. 21, 2016) (granting final approval of "Settlement Amount [that] represents 15 percent of Plaintiffs' likely recovery at trial if they were to prevail").

The relief per Woolite bottle for class members who submit valid claims is also exceptionally strong. If this motion is approved, class members are projected to receive $4.78 per Woolite bottle validly claimed (in the first distribution). Kafka Decl. ¶ 77. By comparison, Plaintiffs' expert calculated that price premium damages per Woolite bottle are approximately █████ *Id.* ¶ 9. In other words, for class members who submit valid claims, their relief will exceed their price premium damages. *Id.* ¶ 78. This is an exceptionally strong result that merits approval.

1

**ii.    Continued Litigation Would Entail Substantial Cost, Risk, and Delay.**

2    Almost all class actions involve high levels of cost, risk, and lengthy duration, which

3    supports the Ninth Circuit's "strong judicial policy that favors settlements, particularly where

4    complex class action litigation is concerned." *Linney,* 151 F.3d at 1238 (internal citations omitted).

5    Here, had the parties not settled, the litigation would have been risky, protracted, and costly.

6    While Plaintiffs believe that they have a strong case, they faced many risks. First, Reckitt's

7    summary judgment motion was still pending before the Court. ECF No. 156. If Reckitt's summary

8    judgment motion were granted, it would have resolved the entire case in Reckitt's favor, leaving

9    the class with no relief.

10    Second, trial is always risky. Here, Plaintiffs' success at trial depended on Plaintiffs

11    convincing the finder of fact (the jury) to side with Plaintiffs on multiple contentious factual

12    disputes. Plaintiffs would have to had persuaded the jury that: (a) Woolite's color renew/revive

13    representation is false or misleading, (b) that the color renew/revive claim is material to a

14    reasonable consumer, and (c) that the color renew/revive representation caused class members to

15    suffer damages. Reckitt had also submitted reports from five experts who supported Reckitt's

16    positions on these factual disputes. Kafka Decl. ¶ 24. While Plaintiffs' experts conducted rigorous

17    analyses, Plaintiffs' expert opinions would have all been attacked at trial by Reckitt's experts. For

18    example, Reckitt's experts criticized (a) the methodology used by Plaintiffs' expert chemist to test

19    whether Woolite renews or revives colors in clothing, (b) the studies that Plaintiffs' marketing

20    expert relied upon to opine that the color renew/revive claim is material, and (c) the methodology

21    that Plaintiffs' damages expert used to calculate damages. *Id.* ¶ 25.

22    Of course, even if Plaintiffs prevailed on each of these issues through trial, an appeal would

23    likely follow, taking another two-plus years to resolve. At best, a class recovery would come by

24    perhaps 2025 or 2026. So, while there were reasonable prospects for a somewhat greater recovery

25    following a trial and appeals, that victory would have entailed substantial risk, cost, and delay. All

26    of these considerations favor settlement; the classes will receive meaningful relief now—not years

27    down the road, assuming they prevailed at all.

28

1

2

### iii.    The Settlement Provides for an Effective Distribution of Proceeds to the Classes.

3

4

5

The settlement contains an effective distribution process. The parties have devised a plan of allocation that will pay class members on a *pro rata* basis based on the number of eligible Woolite laundry detergent bottles they purchased. Settlement Agreement, Section IX.J.

6

### iv.    The Proposed Award of Attorneys' Fees Also Supports Approval.

7

8

9

10

11

12

13

14

15

16

The proposed award of attorneys' fees also supports approval. Class Counsel seeks an attorneys' fees award of $ 982,500.00, which is 30% of the settlement fund. Meanwhile, Class Counsel has incurred $2,515,617.50 in lodestar litigating this action for 4,035 hours. Thus, if Class Counsel's proposed attorneys' fees are awarded by the Court, Class Counsel will have a "negative" multiplier, being compensated for only 39% of their lodestar in this action. Plaintiffs' fee request is modest given the strong recovery for the classes and the amount of work done by Plaintiffs' counsel. *See Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) ("Multipliers can range from 2 to 4 or even higher."); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving 6.85 multiplier and stating that "still falls well within the range of multipliers that courts have allowed").

17

18

### v.    The Parties Have No Other Agreements Pertaining to the Settlement.

19

20

21

Courts also must evaluate any agreement made in connection with the proposed settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, the settlement agreement before the Court is the only extant agreement. Kafka Decl. ¶ 7.

22

23

### D.    The Settlement Treats Class Members Equitably Relative to Each Other.

24

25

26

27

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 5:20-cv-02101-BLF

1    different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory

2    committee's note (2018).

3         Here, the settlement treats all class members the same, paying all class members on a *pro*

4    *rata* basis based on the number of eligible Woolite laundry detergent bottles they purchased *See,*

5    *e.g.*, *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding

6    no preferential treatment because the settlement "compensates class members in a manner

7    generally proportionate to the harm they suffered on account of [the] alleged misconduct").

8         Though counsel is requesting additional payment for the class representatives in the form

9    of service awards, those extra payments are to recognize the work they performed and the risks

10   they incurred on behalf of the class. "It is well-established in this circuit that named plaintiffs in a

11   class action are eligible for reasonable incentive payments, also known as service awards. In fact,

12   the Ninth Circuit recently noted that incentive payments to named plaintiffs have become 'fairly

13   typical' in class actions." *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *6 (N.D. Cal. Feb.

14   6, 2012). As is detailed below, the proposed service awards here are commensurate with work

15   conducted by the class represent in this case. Kafka Decl. ¶ 26.

16             **E.    The Classes Received Best Notice Practicable.**

17        "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

18   *Rivas*, 2020 WL 264401, at *4 (internal citations omitted).

19        Here, Epiq provided the best notice practicable. Azari Decl. ¶ 8. Epiq provide notice

20   through a digital/internet notice program. *Id.* Through the digital/ internet notice program, Epiq

21   reached approximately 71% of the settlement class. *Id.* That reach was further enhanced by internet

22   sponsored search listings, an informational release, a Settlement Website, and newspaper notice,

23   which are not included in the reach calculation. *Id.* Because there is no customer contact

24   information for purchasers of Woolite laundry detergent, direct notice could not be provided to the

25   class. Based on Epiq's experience, the notice plan provided the best notice practicable under the

26   circumstances of this case. *Id.*

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 5:20-cv-02101-BLF

The notices also complied with Rule 23(c)(2)(B) in that they "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *See* Kafka Decl., Exs. 2-C & 2-D. The notice is also consistent with the sample provided by the Federal Judicial Center.

### F.    Reaction of the Classes Also Supports Approval of the Settlement.

In deciding whether to grant final approval of a settlement, courts also consider the "reaction of the class members to the proposed settlement." *Kulik v. NMCI Med. Clinic Inc.*, 2023 WL 2503539, at *7 (N.D. Cal. Mar. 13, 2023) (Freeman, J.) (internal citations omitted).

The overwhelmingly positive reaction of class members also supports final approval. No class members have requested to be excluded or objected to the settlement. Azari Decl. ¶ 26. The 8.6% claims rate is strong, particularly because no e-mail addresses or direct contact information were available for class members. Courts have repeatedly accepted settlements with 1% claims rates. *See e.g., In re Zoom Video Commc'ns, Inc. Privacy Litig.*, 2022 WL 1593389, at *8 (N.D. Cal. April 21, 2022) (finding a one percent claims rate was reasonable, particularly because "the settlement is also non-reversionary, mitigating any risk that the one percent claim participation rate was intentionally engineered."); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214-215 (W.D. Mo. 2017), aff'd, 896 F.3d 900 (8th Cir. 2018) (collecting cases that approved settlements with less than one percent claims rates).

****

For all these reasons, the proposed settlement merits approval.

## II.    CERTIFICATION OF THE SETTLEMENT CLASSES IS WARRANTED

In July 2022, the Court certified Plaintiffs' three proposed statewide classes for California, New York, and Massachusetts. ECF No. 143 at 22-23. As part of the Settlement, the Parties have

agreed to three statewide settlement classes that are functionally identical to the classes certified by the Court in July 2022. *See* Settlement Agreement, Section II.V.

Where, as here, a class has already been certified, the Court ordinarily need only consider whether the proposed settlement "calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." See Committee Notes, Subdivision 23(e)(1). Here, the class membership of the certified class and settlement class is identical. However, there is a minor wording difference between the settlement class definition and certified class definition. The class period end date for the certified class is "the present," while the class period end date for the settlement class is May 1, 2023. The parties believe that using a specific date (May 1, 2023) rather than "to the present" will be more understandable to potential class members. In any event, the membership of the certified class and settlement class is co-extensive: Reckitt did not sell any bottles of Woolite with labels bearing the phrases "color renew" or "revives colors" after June 2021. Kafka Decl. ¶ 10. Thus, the number of class members is the same regardless of whether the class period end date is May 1, 2023 or "the present."

Because the settlement classes are functionally identical to the litigation classes certified by the Court in July 2022, the settlement classes should be certified under Rule 23(a) and (b)(3).

## III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE GRANTED

Class Counsel requests a fee award of $982,500.00, which is 30% of the non-reversionary common fund. "[I]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. "Courts applying this method 'typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate

explanation in the record of any special circumstances justifying a departure.'" *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *14 (N.D. Cal. Nov. 6, 2023) (Freeman, J.) (quoting *In re Bluetooth*, 654 F.3d at 941).

The 25% benchmark can be adjusted based on relevant factors. The "[r]elevant factors to a determination of the percentage ultimately awarded include (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Abadilla,* 2023 WL 7305053, at *14 (internal citations omitted).

As discussed below, Class Counsel's request for a fee award of 30% of the non-reversionary common fund is reasonable and justified by the factors considered in the Ninth Circuit. Three factors in particular support Class Counsel's requested fee award. First, Counsel has achieved an excellent result: for class members who submit valid claims, their relief will exceed their price premium damages. Kafka Decl. ¶ 78. Second, fee awards of 30% to 50% of the common fund are frequently awarded in smaller cases, i.e., cases with common funds of $10 million or less. *See Rivas*, 2020 WL 264401, at *7–8. Third, if Class Counsel is awarded $982,500.00 in attorneys' fees, Class Counsel will have a "negative" multiplier, being compensated for only 39% of their lodestar in this action.

### A.   Fee Request is Supported by Strong Result Achieved for the Classes.

In awarding attorneys' fees in the Ninth Circuit, "[t]he most critical factor is the results achieved for the class." *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *12 (N.D. Cal. Nov. 12, 2019) (Freeman, J.).

Class Counsel has achieved a strong result for the class. The $3,275,000 non-reversionary settlement fund is a considerable amount given that Plaintiffs' expert estimated that price premium damages for all three classes would total $3.7 million. Kafka Decl. ¶ 9. Furthermore, for class members who submit valid claims, their relief will exceed their price premium damages. Kafka Decl. ¶ 78. Class members are projected to receive $4.78 per Woolite bottle validly claimed (in

the first distribution), while Plaintiffs' expert calculated that price premium damages per Woolite

bottle are approximately ███. *Id.* ¶¶ 77, 78.

Courts have found that similarly strong results justified Class Counsel fee awards of 30%

(or more) of the common fund. *See e.g.*, *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at

*10, 12 (approving attorney fee award of 30% of the common settlement fund where "the

settlement represents 32.5% of recoverable damages"); *Mauss v. NuVasive, Inc.*, 2018 WL

6421623, at *6 (S.D. Cal. Dec. 6, 2018) (awarding fee of 30 percent of the common fund where

settlement recovery was approximately 23 to 34% of damages); *Thieriot v. Celtic Ins. Co.*, , 2011

WL 1522385, at *6-7 (N.D. Cal. Apr. 21, 2011) (granting fee award of 33% of the settlement fund

where, like here, the "settlement amount exceeds the amount required to make each class member

whole … even after deducting the requested attorneys' fees, costs, and incentive award.").

### B. Class Counsel Overcame Significant Risk to Deliver a Strong Result for the Classes.

The second factor in determining the appropriate attorneys' fee award is the "risk of the

litigation." *Abadilla*, 2023 WL 7305053, at *14. Here, there were a multitude of litigation risks

that could have prevented recovery. Plaintiffs have already surmounted many of the risks.

Significantly, Plaintiffs defeated Reckitt's motion to dismiss, successfully moved for class

certification, and prevailed in opposing Reckitt's motion to exclude Plaintiffs' expert chemist. ECF

Nos. 70, 143. As discussed above in the context of settlement approval, Plaintiffs still faced

substantial risks, including Reckitt's summary judgment motion and the impending trial. *See*

*Supra, at* 11-12. If Reckitt had prevailed at summary judgment or at trial, the class would have

received no relief. In sum, the multitude of litigation risks, both those that were surmounted and

those still present at the time of settlement, augur in favor of the Court granting Class Counsel's

fee request.

### C. Class Counsel's Skill in Litigating on Behalf of the Classes Further Supports the Requested Fee Award.

The skill required and the quality of the work performed by Class Counsel is another factor that supports Class Counsel's fee request. *Abadilla*, 2023 WL 7305053, at *14.

The result achieved here stems in part from the experience and capabilities of Class Counsel. Cohen Milstein has been recognized as highly skilled in complex litigation, including consumer class actions. *See* Kafka Decl. Ex. 1. Class Counsel has successfully litigated many prior class actions involving consumer protection claims and brought that experience and knowledge to bear on behalf of the class. Kafka Decl. ¶ 2.

### D. Class Counsel Undertook the Litigation an a Purely Contingent Basis.

In awarding attorneys' fees in the Ninth Circuit, another factor is the "contingent nature of the fee." *Abadilla*, 2023 WL 7305053, at *14. "The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (Cal. 2004).

For over three years, Class Counsel litigated this case on a purely contingent basis with no guarantee of compensation for their 4,035 hours of work and hundreds of thousands of dollars in out-of-pocket costs. Class Counsel has still not been paid for any of its time or expenses incurred to date. This factor thus weighs in favor of the requested fee. *See Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *10–11 (N.D. Cal. Nov. 9, 2020) (Freeman, J.) (approving attorneys' fee award of 31% of the gross settlement recovery because, among other reasons, counsel had litigated the "case completely contingent on outcome.")

### E. Attorneys' Fee Awards of 30% to 50% of the Fund are Frequently Awarded for Common Funds of $10 Million or Less.

The "awards made in similar cases" is another relevant factor in determining the appropriate attorneys' fee. *Abadilla*, 2023 WL 7305053, at *14.

The pertinent comparators here are settlements with relatively small common funds, i.e., common funds of $10 million or less. Attorneys' fees of 30% to 50% of the common fund are

frequently awarded in such cases. *See Rivas v. BG Retail*, 2020 WL 264401, at *7–8 (awarding attorneys' fee of 45% of the total recovery); *see also Thieriot,* 2011 WL 1522385, at *6 (approving fee award of 33% of settlement fund in part due to "common practice to award attorneys' fees at a higher percentage than the 25% benchmark in cases that involve a relatively small—i.e., under $10 million—settlement fund."); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. Jul.27, 2010) (collecting cases); *Alvarez v. Farmers Ins. Exch.*, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million."). Class Counsel's fee request of 30% of the common fund is thus further supported by the fact that the settlement fund is less than $10 million.

### F.   Reaction of Classes to the Settlement Supports Counsel's Requested Fee.

As discussed above, the reaction of the class to the settlement has been overwhelmingly positive. Supra at 14. This also supports Counsel's fee request.

### G.   A Lodestar Cross-Check Confirms the Reasonableness of Counsel's Requested Fee.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Abadilla*, 2023 WL 7305053, at *14 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting .... [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Abadilla,* 2023 WL 7305053, at *14. The lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. *Id.* Thus even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

*Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Id.* at 942.

Below, Plaintiffs discuss the 4,035 hours devoted to the litigation, and counsel's typical hourly rates, which give rise to a base lodestar of $2,515,617.50. Kafka Decl. ¶ 17.

### i. Class Counsel Reasonably Devoted Over Four Thousand Hours to Prosecuting This Litigation Over the Past Three Years.

To assist the Court in evaluating its lodestar, Class Counsel reviewed its time records and prepared a declaration with detailed summaries of time spent on various litigation tasks. Kafka Decl. ¶ 18. As detailed in that declaration, Class Counsel and its professional staff have spent 4,035 hours litigating this case for the benefit of the class. *Id.* ¶ 19.

Class Counsel's time in this case included:

- A rigorous pre-filing investigation, including working with an expert chemist;
- Drafting three complaints (the initial complaint, Amended Complaint, and Second Amended Complaint);
- Drafting the opposition to Reckitt's motion to dismiss;
- Reviewing more than 18,000 pages of documents produced by Reckitt;
- Assisting the Plaintiffs in responding to dozens of Requests for Production and Interrogatories propounded by Reckitt;
- Briefing 5 discovery disputes;
- Deposing 9 witnesses – 4 Reckitt employees and 5 experts;
- Preparing and defending 9 witnesses for their depositions – 6 class representatives and 3 experts;
- Working with three experts, a chemist, an economist, and a marketing expert, who each submitted both class certification and trial expert reports;
- Drafting Plaintiffs' motion for class certification and reply brief;

- Drafting an opposition to Reckitt's motion for summary judgment and to exclude Plaintiffs' marketing expert;

- Mediating with Magistrate Judge Laurel Beeler in July 2021 and March 2022 and engaging in intensified settlement discussions in February and March 2023;

- Preparing a comprehensive settlement agreement, with exhibits including long-form and short-form class notices and developing the class notice plan; and

- Drafting the preliminary approval brief.

Kafka Decl. ¶ 12.

This litigation, in short, required considerable effort by Class Counsel. These efforts are likely to continue for least several more months, as Class Counsel continues to work through the settlement approval process and continues to work with the settlement administrator and class members on settlement-related issues that arise. *Id.* ¶ 13.

### ii. Class Counsel's Rates Fall Within the Range Prevailing in the Community and Have Been Approved By Courts.

After evaluating the number of hours devoted to the litigation, the next step is to assign a reasonable hourly billing rate. In assessing the reasonableness of an attorney's hourly rate, the Court should consider whether the rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) ("The reasonable hourly rate is that prevailing in the community for similar work." (citations omitted)).

The hourly rates used to calculate counsel's lodestar range from $725 to $1,150 for partners, $510 to $650 for associates, and $350 for paralegals. Kafka Decl. ¶ 17. The hourly rates are set by counsel based on their own experience, based on periodic reviews of the rates charged by other attorneys involved in complex litigation, and fall within the range of rates prevailing in the relevant legal community. *Id.* ¶ 15.

Class Counsel's hourly rates are also regularly evaluated by courts in California and across the country and have been consistently approved as reasonable in recent years. Kafka Decl. ¶ 16; *see e.g., In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *17 (N.D. Cal. Aug. 17, 2018) (approving Cohen Milstein's hourly rates); *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 14-cv-04062, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (approving Cohen Milstein's hourly rates); *In re Wells Fargo & Co. Sec. Litig.*, Case No. 1:20-cv-04494-JLR-SN (S.D.N.Y. Sept. 8, 2023), ECF No. 206 (approving Cohen Milstein's hourly rates); *Cosby v. KPMG LLP*, 2022 WL 4129703, at *2 (E.D. Tenn. July 12, 2022), and *Weiner v. Tivity Health, Inc.*, No. 17-cv-1469, ECF No. 177 at 4 (M.D. Tenn. Oct. 7, 2021) (confirming the "reasonableness" of CMST's hourly fees).

### iii. Class Counsel's Negative Multiplier is Another Factor Supporting Approval of the Fee Request.

Based on Class Counsel's lodestar of $2,515,617.50, the requested attorneys' fee reflects a negative multiplier of 39% of Class Counsel's lodestar. Plaintiffs' fee request is thus modest compared to the amount of work done by Plaintiffs' counsel. *See Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) ("Multipliers can range from 2 to 4 or even higher."); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving 6.85 multiplier and stating that "still falls well within the range of multipliers that courts have allowed").

Class Counsel's negative multiplier is another factor supporting approval of Class Counsel's fee request. *See Rivas,* 2020 WL 264401, at *7–8 ("The Court finds that the negative multiplier of 0.49 supports the conclusion that the requested fees are reasonable."); *Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *11 (N.D. Cal. Apr. 19, 2021) (Freeman, J.) ("a multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable."); *In re Nexus 6P*, 2019 WL 6622842, at *13 (finding "negative multiplier of 0.76" further "demonstrates that requested 30% fee award is reasonable.")

**IV.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF COSTS IS REASONABLE AND SHOULD BE GRANTED**

In addition to the requested attorneys' fee, Class Counsel seeks reimbursement for $369,499.27 in out-of-pocket costs incurred during the litigation. Class Counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Abadilla*, 2023 WL 7305053, at *14 (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted)); Fed. R. Civ. P. 23(h) (permitting the court to award nontaxable costs that are authorized by law).

The attached declaration of Eric Kafka details Class Counsel's costs, broken down by category. Kafka Decl. ¶ 21. These expenditures were necessary to Class Counsel's prosecution of the action and are particularly reasonable given that Plaintiffs needed to assemble a team of three experts to prosecute their case. *Id.* ¶¶ 22, 23. The costs that Class Counsel seek to recover are regularly billed to clients in hourly fee cases, and routinely awarded in contingency fee cases. *See, e.g., In re Capacitors Antitrust Litig.*, No. 14-cv-03264, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, travel, mail and postage costs." (citation omitted)); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *9 (reimbursing counsel's "professional service fees (experts, investigators, accountants), travel fees, and discovery-related fees"). The notice informed class members that Class Counsel would seek up to $400,000 in litigation expenses. ECF No. 178-2 at 62. Class Counsel thus requests full reimbursement of their $ 369,499.27 in out-of-pocket costs.

**V.    REQUESTED CLASS REPRESENTATIVE SERVICE AWARDS OF $10,000 ARE APPROPRIATE AND SHOULD BE GRANTED**

Plaintiffs seek service awards of $10,000 for each of the six class representatives, totaling $60,000.00.

"[A]t the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class." William B. Rubenstein, 5 NEWBERG ON CLASS ACTIONS § 17:1 (5th ed. 2020). Service awards are common in class actions and

23

"compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000" and service awards of $5,000 are presumptively reasonable. *Kulik*, 2023 WL 2503539, at *10 (internal citations omitted). District courts in this circuit have repeatedly approved $10,000.00 (or more) as service awards to class representatives. *See e.g., Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *11 (Freeman, J.) (approving $10,000 service award for class representative); *Taylor v. Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *18 (C.D. Cal. May 14, 2015) (awarding $15,000 service award to two class representatives).

Here, service awards of $10,000 are warranted because of the substantial time and effort that the six class representatives expended on behalf of the classes. The attached declaration from Eric Kafka sets forth the work conducted by the class representatives on behalf of the classes. Kafka Decl. ¶¶ 27-73. Each class representative spent more than 60 hours pursuing the classes' claims. *Id.* ¶¶ 27, 35, 42, 50, 58, 66. The class representatives' work on behalf of the classes included: reviewing pleadings; responding to dozens of requests for production and interrogatories; searching for, and producing, documents; testifying at lengthy full day depositions; participating in the mediation process (and for Mr. Prescott, Mr. Marshall, and Ms. Kittredge, attending the July 2021 mediation session via Zoom); engaging in preliminary trial preparation discussions with counsel; and routinely monitoring the action and providing input throughout the litigation. *Id.* ¶¶ 27-73.

The class representatives' efforts in this litigation are akin to *Quiruz* where this Court approved a $10,000 service award for a class representative who was deposed, gathered documents, and participated in the mediation process. *Quiruz*, 2020 WL 6562334, at *11. The class representatives' intensive discovery work in this action -- including testifying at their depositions -- also distinguishes this matter from many cases where smaller service awards have

been granted. *See e.g., Kulik,* 2023 WL 2503539, at *10–11 (service awards of $3,000 to $5,000 where only informal discovery occurred and class representatives were not deposed).

Finally, aggregate service awards of $60,000 are less than 1.9% of the common fund and thus will not diminish the strong recovery for the classes. Kafka Decl. ¶ 26.

## VI.    COURT SHOULD APPROVE THE WORLD WILDLIFE FUND AS THE *CY PRES* RECIPIENT

Plaintiffs also ask that the Court approve the World Wildlife Fund ("WWF") as the *cy pres* recipient. Pursuant to the settlement agreement, checks that are not deposited for 90 days will be placed in a residual fund. Settlement Agreement ¶ IX.L. The residual fund will be distributed on a *pro rata* basis "until the Residual Fund is exhausted, unless the Parties mutually agree that a supplemental distribution is economically unfeasible. Should the Parties mutually agree that a supplemental is economically unfeasible, then the parties will meet and confer in good faith to reach an agreement on a *cy pres* recipient approved by the Court." Settlement Agreement ¶ IX.L. At the preliminary approval hearing, the Court directed the parties to select a *cy pres* recipient and to seek the Court's approval of that *cy pres* recipient at final approval. 9/14/23 Hr'g Tr. at 6-7.

The World Wildlife Fund is an appropriate *cy pres* recipient for this action. World Wildlife Fund Inc. is a non-profit charity under Section 501(c)(3) of the Internal Revenue Code.[3] One of the WWF's projects is to "draw consumer attention to the environmental impact of their current laundry practices, change ingrained laundry routines, and broadly encourage more sustainable household laundry behaviors."[4] The WWF thus relates to the issues in this litigation about laundry detergent. Class Counsel does not have any connection to the WWF. Kafka Decl. ¶ 79.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court grant final approval of the proposed settlement, certify the settlement classes, and award the requested fees, costs, and service awards.

---

[3] The WWF's website is  https://www.worldwildlife.org/

[4] https://files.worldwildlife.org/wwfcmsprod/files/Publication/file/8af4cfmkqh_WWF_Cold_Wash_Evidence_Review_220902_vF.pdf

DATED: January 26, 2024                    Respectfully submitted,


By: /s/ *Eric Kafka*

Eric Kafka *(*admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor,
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

Geoffrey Graber (SBN 211547)
Brian Johnson (admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com
bejohnson@cohenmilstein.com

Theodore J. Leopold *(*admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
tleopold@cohenmilstein.com

***Counsel for Plaintiffs and Classes***

PLAINTIFFS' MOTION FOR FINAL APPROVAL,
ATTORNEYS' FEES, COSTS, & SERVICE AWARDS
Case No. 5:20-cv-02101-BLF